## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **CARLOS MOLINA ROMAN**<br><br>Plaintiff<br><br>**v.**<br><br>**MUNICIPALITY OF CIDRA; DON QUIJOTE PIZZA LLC;E' PURA CEPA LLC; FLOR DE MAGA GASTROBAR LLC; LUCIOS RESTAURANT L.L.C.; COLMADO MORALES, INC.; NONNA'S PIZZA A LEÑA LLC; ÑAO KITCHEN ART L.L.C.; JUNTA DE TITULARES VILLA DEL CARMEN MALL LLC; MISANGELES CORP.; PANERA MS CORP.; POLITO'S COFFEE INC.; PUEBLO VIEJO, LLC; Q'RICO BRUNCH & RESTAURANT LLC; RESTAURANT DE LA PAGODA CHINA CORP.; MADI SERVICES LLC; GRUPO RIVERA RIVERA LLC; 804 COFFEE BAR LLC; MENNONITE GENERAL HOSPITAL, INC.**<br><br>Defendants | **CIVIL NO.** |

## COMPLAINT

**TO THE HONORABLE COURT:**

The plaintiff, Carlos Molina Roman, acting in his own interest, respectfully requests a Permanent Injunction against the Municipality of Cidra in accordance with Title II of the Americans with Disabilities Act, as well as damages and a Permanent Injunction under Section 504 of the Rehabilitation Act, 29 U.S.C, and, moreover, also requests a permanent injunction against Don Quijote Pizza LLC; E' Pura Cepa LLC; Flor De Maga Gastrobar LLC;

1

Lucios Restaurant L.L.C.; Colmado Morales, Inc.; Nonna's Pizza A Leña LLC; Ñao Kitchen Art L.L.C.; Junta De Titulares Villa Del Carmen Mall LLC; Misangeles Corp.; Panera MS Corp.; Polito's Coffee Inc.; Pueblo Viejo, LLC; Q' Rico Brunch & Restaurant LLC; Restaurant De La Pagoda China Corp.; Madi Services LLC; Grupo Rivera Rivera LLC;  804 Coffee Bar LLC; Mennonite General Hospital, Inc.; in accordance with Title III of the *Americans with Disabilities Act.*

## I.    INTRODUCTION

1. This lawsuit emerges from the systemic discrimination that has transformed the streets and sidewalks of Cidra into a maze of barriers for Carlos Molina Román and other citizens with disabilities. Mr. Molina, who relies entirely on a wheelchair due to muscular dystrophy and faces visual challenges from oculocutaneous albinism, brings this action to challenge the Municipality of Cidra's persistent and deliberate failure to ensure accessibility in its public spaces—failures that constitute flagrant violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the fundamental principles of equal access that these laws embody.

2. The barriers encountered by Mr. Molina are not isolated to Cidra but represent a systemic problem that plagues communities across Puerto Rico. As recently demonstrated in Betancourt-Colón v. City of San Juan, Case No. 19-cv-1837-JAG-GLS (D. P.R. 2023), municipalities throughout Puerto Rico have neglected their legal obligations to maintain accessible public rights-of-way. The conditions in Cidra, however, are significantly worse than those that prompted private and federal intervention in San Juan, with more severe structural barriers, deliberate removal of accessibility features, and a more pervasive pattern of non-compliance that demands immediate judicial action.

3.   As established in <u>Mote v. City of Chelsea</u>, 252 F. Supp. 3d 642, 651-652 (E.D. Mich. 2017), public entities cannot escape their responsibilities under the ADA by shifting blame to other governmental units. Each defendant in this case bears a specific obligation to ensure that its "facilities" are accessible to individuals with disabilities. The defendants' attempts to classify sidewalks and pedestrian pathways as mere "facilities" rather than "services" represents a fundamental misreading of the ADA and its implementing regulations, as the court in <u>Mote</u> explicitly recognized that "public streets and sidewalks" fall squarely within the ADA's mandate.

4.   Under 28 C.F.R. § 35.151, public entities must ensure that any facility constructed or altered after January 26, 1992, "shall be designed and constructed in such manner that the facility or part of the facility is readily accessible to and usable by individuals with disabilities." This regulation further specifies that "streets, roads, and highways must contain curb ramps or other sloped areas at any intersection having curbs or other barriers to entry from a street level pedestrian walkway." The violations documented in this complaint represent explicit rejections of these clear legal mandates.

5.   The Betancourt case has catalyzed game-changing progress for accessibility throughout Puerto Rico, establishing a framework for municipalities to assess and remediate barriers in public rights-of-way. While San Juan has committed to a comprehensive assessment and remediation process under judicial supervision, the Municipality of Cidra has made no comparable effort to address its deteriorating infrastructure. This stark contrast underscores the necessity for immediate intervention in Cidra, where conditions for individuals with mobility impairments are demonstrably worse than in the capital city.

6.  Mr. Molina's muscular dystrophy has progressively weakened his muscle function, leaving him entirely dependent on a wheelchair for mobility. Even the most basic movements require significant effort, and navigating unnecessary barriers causes painful muscle strain and accelerated fatigue. His oculocutaneous albinism further compounds these challenges, making it difficult to detect obstacles and judge distances, particularly in areas with poor design or inadequate maintenance.

7.  Most egregiously, the Municipality of Cidra has actively removed existing accessibility features. As documented in this complaint, the City has deliberately eliminated curb cuts and ramps that previously allowed wheelchair users to navigate certain intersections, replacing them with solid curbs and grass that now render these routes completely impassable. Such deliberate actions to reduce accessibility flagrantly violate both the letter and spirit of the ADA, echoing the situation in <u>Mote v. City of Chelsea</u>, 252 F. Supp. 3d 642, 646-647 (E.D. Mich. 2017), where the court condemned a municipality's systematic removal of accessibility features.

8.  The defendant businesses named in this complaint have constructed their own barriers to accessibility while the Municipality has turned a blind eye. From Don Quijote Pizza to Hospital Menonita de Cidra, these establishments share a pattern of discrimination characterized by inaccessible entrances, excessively high service counters, and interior spaces designed without consideration for wheelchair users. As the court recognized in <u>Mote</u>, 252 F. Supp. 3d at 645, "allowing businesses to renovate storefronts without including appropriate accessibility measures" constitutes a clear violation of the ADA that public entities are obligated to prevent.

9.  Beyond mere oversight, the Municipality of Cidra has granted and maintained use permits for numerous businesses despite their blatant failure to meet accessibility requirements. These permits were obtained through false or incomplete information regarding compliance with accessibility laws—a practice that enabled discrimination to flourish under the guise of legitimate business operation. Such failures in the permitting process are actionable violations of the ADA.

10. The Supreme Court in <u>Tennessee v. Lane</u>, 541 U.S. 509, 531, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004), emphasized that Title II "serves to enforce constitutional guarantees of... equal protection" and remedies "a pattern of unequal treatment in the administration of a wide range of public services, programs, and activities." Unlike the Municipality of San Juan, which has acknowledged its obligations under the ADA by adopting a structured compliance program with third-party assessment and verification procedures, Cidra has taken no meaningful steps to address its pervasive accessibility barriers, demonstrating deliberate indifference to the constitutional and statutory rights of its disabled residents.

11. The discrimination faced by Mr. Molina is not isolated or occasional, but pervasive and continuous. His ability to participate in fundamental aspects of community life—attending festivals, accessing municipal buildings, utilizing public parking, or simply traveling from one place to another—has been systematically compromised by the Municipality's failures. The defendants' ongoing refusal to address these accessibility defects despite repeated notice of non-compliance demonstrates a pattern of deliberate indifference to the rights of disabled citizens.

12.    Following the reasoning in <u>Mote</u>, 252 F. Supp. 3d at 652-653, this Court should reject any attempt by defendants to escape liability by claiming that sidewalks are merely "facilities" rather than "services." As that court recognized, "any sensible reading of ADA Title II compels the conclusion that maintaining public pedestrian thoroughfares for citizens to get around a city—and access the many public services and businesses located within—is the archetypal example of the most fundamental of public services."

13.    While the Betancourt-Colón stipulated order has established a blueprint for progressive accessibility improvements in San Juan, the situation in Cidra demands more immediate and extensive intervention. The decree in Betancourt-Colón established a 36-month framework for accessibility assessment and remediation, including training requirements, barrier reporting processes, and third-party verification. Cidra requires a similar structured approach but with accelerated timelines given the more severe state of disrepair and the active removal of previously existing accessibility features.

14.    As recognized in <u>Mote</u>, 252 F. Supp. 3d at 654-655, defendants cannot avoid liability by pointing to bureaucratic divisions of responsibility. The court explicitly rejected arguments that "mere bureaucratic segregation between individual government agencies that build and maintain facilities and those that operate within them" could excuse non-compliance with the ADA, noting that such a "tortured reading of Title II" would lead to an "absurd result" where many public facilities would be entirely exempt from accessibility requirements.

15.    This lawsuit seeks not only to remedy specific barriers but to address the systematic exclusion that permeates Cidra's approach to accessibility. The relief sought—structural modifications to remove barriers, revocation of fraudulently obtained permits, and the

implementation of proper oversight mechanisms—is necessary to ensure that Cidra becomes a community where all citizens, regardless of disability status, can fully participate in public life as guaranteed by federal and state law. Just as the Betancourt-Colón case has begun to transform accessibility in San Juan, this action seeks to create lasting change in Cidra and establish another crucial precedent for accessibility throughout Puerto Rico.

## II.    PARTIES

16.    The plaintiff's name is Carlos Molina Roman, and he is a resident of the Municipality of Cidra.

17.    The co-defendant, Municipality of Cidra, is a municipal entity with the capacity to sue and be sued. At all times relevant to this cause of action, it supervised, operated, or owned the sidewalks and streets adjacent to the locations situated within the Municipality of Cidra.

18.    The following co-defendants represent the respective businesses they own, lease, rent, or operate, located within the Municipality of Cidra:

18.1.    Don Quijote Pizza LLC is the owner, lessor, lesse, and/or operator of the public accommodation known as Don Quijote Pizza.

18.2.    E' Pura Cepa LLC is the owner, lessor, lesse, and/or operator of the public accommodation known as E' Pura Cepa Restaurante.

18.3.    Flor De Maga Gastrobar LLC is the owner, lessor, lesse, and/or operator of the public accommodation known as Flor De Maga Gastrobar.

18.4.    Lucios Restaurant L.L.C. is the owner, lessor, lesse, and/or operator of the public accommodation known as Lucios Restaurant.

18.5.    Colmado Morales, Inc. is the owner, lessor, lesse, and/or operator of the public accommodation known as Morales Bar.

18.6.    Nonna's Pizza A Leña LLC is the owner, lessor, lesse, and/or operator of the public accommodation known as Nonna's Pizza A Leña

18.7.    Ñao Kitchen Art L.L.C. is the owner, lessor, lesse, and/or operator of the public accommodation known as Ñao Kitchen Art.

18.8.    Junta De Titulares Villa Del Carmen Mall LLC is the owner, lessor, lesse, and/or operator of the public accommodation known as Villa del Carmen Mall.

18.9.    Misangeles Corp. is the owner, lessor, lesse, and/or operator of the public accommodation known as Carvel.

18.10.    Panera MS Corp. is the owner, lessor, lesse, and/or operator of the public accommodation known as Iíbaro.

18.11.    Polito's Coffee Inc. is the owner, lessor, lesse, and/or operator of the public accommodation known as Polito's Coffee.

18.12.    Pueblo Viejo, LLC is the owner, lessor, lesse, and/or operator of the public accommodation known as Pueblo Viejo.

18.13.    Q'rico Brunch & Restaurant LLC is the owner, lessor, lesse, and/or operator of the public accommodation known as Q' Rico Brunch & Restaurant.

18.14.    Restaurant De La Pagoda China Corp. is the owner, lessor, lesse, and/or operator of the public accommodation known as La Pagoda China.

18.15.    Madi Services LLC is the owner, lessor, lesse, and/or operator of the public accommodation known as Saboreo Deli & Lunch.

18.16.    Grupo Rivera Rivera LLC is the owner, lessor, lesse, and/or operator of the public accommodation known as Supermercado Rivera.

18.17.    804 Coffee Bar LLC is the owner, lessor, lesse, and/or operator of the public accommodation known as 804 Coffee Bar.

18.18.    Mennonite General Hospital, Inc. is the owner, lessor, lesse, and/or operator of the public accommodation known as Hospital Menonita de Cidra.

## III.    ALLEGATIONS

### A.  Regarding the Plaintiff's Medical Conditions

19.    Mr. Carlos Molina Román has a severe mobility impairment due to muscular dystrophy, a progressive neuromuscular disorder that gradually weakens and deteriorates his muscle function. This genetic condition affects the integrity and regeneration of muscle fibers, leading to progressive muscle wasting and loss of strength over time. As the disease advances, his muscles become increasingly weak and atrophied, making it impossible for him to perform voluntary movements that require muscular control.

20.    As a direct consequence of muscular dystrophy, Mr. Molina Román has completely lost the ability to walk or stand, as his lower body muscles have deteriorated to the point where they can no longer support his weight. He must rely entirely on a wheelchair as his primary means of mobility, using it to navigate both indoor and outdoor environments and to complete essential daily activities such as moving between rooms, accessing public spaces, and performing routine tasks. His upper body strength is also significantly compromised, making even seemingly simple actions—such as lifting objects, transferring from his wheelchair to another surface, or maintaining his posture for extended periods—extremely difficult and physically exhausting.

21. In addition to the mobility challenges caused by muscular dystrophy, Mr. Molina Román has oculocutaneous albinism, a genetic condition that affects his vision. This condition reduces his visual acuity and sensitivity to light, making it difficult for him to distinguish details, read small text, or navigate unfamiliar environments. His vision impairment adds an additional layer of complexity to his daily challenges, requiring him to take extra precautions when moving around, identifying obstacles, and using assistive technology.

22. Given the severity of his disabilities, Mr. Molina Román depends on assistive devices, accessible infrastructure, and accommodations to move safely and independently. These include wheelchair-accessible spaces, ramps, elevators, automatic doors, and specialized seating arrangements that provide the support he needs to function in various environments. He also utilizes adaptive strategies and assistive technologies to mitigate the effects of his physical limitations and maintain as much independence as possible. Despite the profound impact of his disabilities, Mr. Molina Román remains determined to lead a fulfilling life by maximizing his mobility and autonomy through the use of these accommodations.

**B. Concerning the sidewalks, sidewalk ramps, the properties in question, and the Court's jurisdiction**

23. The areas within the Municipality of Cidra and the establishments in controversy, where Mr. Molina has been unable to access due to barriers, are the following:

23.1. The location in question is a place of public accommodation known as Don Quijote Pizza, located at Esquina Street Barcelo 32, Cidra, PR 00739-0000, with coordinates 18.176260187219494, -66.15997064063646.

23.1.1.    The sidewalk in question is located in front of Don Quijote Pizza, situated at Esquina Street Barcelo 32, Cidra, PR, 00739-0000, whose coordinates are 18.176260187219494, -66.15997064063646.

23.1.2.    The sidewalk ramps in question are located at the following coordinates: 18.176263881702855, -66.15996810034503.

23.2.    The location in controversy is a place of public accommodation, known as E' Pura Cepa Restaurante located at Hwy. #1 KM 49.8, Bo. Beatriz, Cidra, PR 00739-0000 with coordinates 18.156404148655255, -66.09981810098422.

23.2.1.    The sidewalk in question is located in front of  E' Pura Cepa Restaurante located at Hwy. #1 KM 49.8, Bo. Beatriz, Cidra, PR 00739-0000 with coordinates 18.156404148655255, -66.09981810098422.

23.3.    The location in controversy is a place of public accommodation, known as Flor De Maga Gastrobar located at Parcelas Gándaras, Hwy. 172 KM 12.7, Street #1, Parcel #129, Cidra, PR 00739-0000 with coordinates 18.175978360307255, -66.15775313957108.

23.3.1.    The sidewalk in question is located in front of Flor De Maga Gastrobar located at Parcelas Gándaras, Hwy. 172 KM 12.7, Street #1, Parcel #129, Cidra, PR 00739-0000 with coordinates 18.175978360307255, -66.15775313957108.

23.4.    The location in controversy is a place of public accommodation, known as Lucios Restaurant located at Highway 172 Km 9.4, Bo Bayamón, Sector Certenejas1, Cidra, PR 00739-0000 with coordinates 18.192681655067606, -66.12751274257998.

23.4.1.    The sidewalk in question is located in front of Lucios Restaurant located at Highway 172 Km 9.4, Bo Bayamón, Sector Certenejas1, Cidra, PR 00739-0000    with    coordinates    18.192681655067606, -66.12751274257998.

23.5.    The location in question is a place of public accommodation known as Morales Bar, located at Praxedes Santiago Street Esq Munoz Barrios #49, Cidra, PR 00739-0000, with coordinates 18.17592412380453, -66.15969702115017.

23.5.1.    The sidewalk in question is located in front of Morales Bar, situated at Praxedes Santiago Street Esq Munoz Barrios #49, Cidra, PR 00739-0000, whose coordinates are 18.17592412380453, -66.15969702115017.

23.6.    The location in question is a place of public accommodation known as Nonna's Pizza A Leña, located at Hwy 1 Km 48.5 Sec Las Cruces Bo Beatriz, Cidra, PR 00739-0000, with coordinates 18.167266516272694, -66.09834682987025.

23.6.1.    The sidewalk in question is located in front of Nonna's Pizza A Leña, situated at Hwy 1 Km 48.5 Sec Las Cruces Bo Beatriz, Cidra, PR 00739-0000,    whose    coordinates    are    18.167266516272694, -66.09834682987025.

23.7.    The location in question is a place of public accommodation known as Ñao Kitchen Art, located at Hwy 734 Km 6.3 Bo Arenas, Cidra, PR 00739-0000, with coordinates 18.13713404398101, -66.13622203832762.

23.7.1.    The sidewalk in question is located in front of Ñao Kitchen Art, situated at Hwy 734 Km 6.3 Bo Arenas, Cidra, PR 00739-0000, whose coordinates are 18.13713404398101, -66.13622203832762.

23.8.    The location in question is a place of public accommodation known as Villa del
Carmen Mall, located at Carr. 734, Cidra, PR 00739-2414, with coordinates
18.172382249685175, -66.15619836190949.

    23.8.1.    The sidewalk in question is located in front of Villa del Carmen Mall,
located at Carr. 734, Cidra, PR 00739-2414, with coordinates
18.172382249685175, -66.15619836190949.

    23.8.2.    The location in question is a place of public accommodation known as
Carvel, located at Local 104 Villa Del Carmen Mall, Cidra, PR
00739-2414,    with    coordinates    18.172382249685175,
-66.15619836190949.

    23.8.3.    The location in question is a place of public accommodation known as
Iíbaro, located at Cond. Cervicentro, Villa del Carmen Mall, Local 107,
Bo. Sud, Carr. 734, Km 0.5, Cidra, PR 00739-2414, with coordinates
18.172382249685175, -66.15619836190949.

23.9.    The location in question is a place of public accommodation known as Polito's
Coffee, located at  20 Jose de Diego Street, Cidra, PR, 00739-3366, with
coordinates 18.17585162771769, -66.16231447582292.

    23.9.1.    The sidewalks in question are located around the corner where is located
Polito's Coffee, located at  20 Jose de Diego Street, Cidra, PR,
00739-3366, at the following coordinates: 18.175964056281682,
-66.16223122159838 and 18.175844224074027, -66.16233355241067.

    23.9.2.    The curbs in question are located at the intersection where is located
Polito's Coffee, at  20 Jose de Diego Street, Cidra, PR, 00739-3366, with

the following coordinates: 18.175834449045766, -66.16233958738027; 18.175825529727216, -66.16230538921602; 18.175786666976837, -66.1623167886041 and 18.175794312108746, -66.16235098676837.

23.10.   The location in question is a place of public accommodation known as Pueblo Viejo located at 10 Praxedes Stgo Street, Cidra, PR 00739-3229, with coordinates 18.175531205443185, -66.15974340532091.

23.10.1.   The sidewalk in question is in front of Pueblo Viejo at 10 Praxedes Stgo Street, Cidra, PR 00739-3229, with the following coordinates: 18.175524621191894, -66.15977684081939.

23.10.2.   The sidewalk ramps in question are located at the following coordinates: 18.17582166685791, -66.15970257277183 and 18.175223064531234, -66.15983667116512.

23.11.   The location in question is a place of public accommodation known as Q' Rico Brunch & Restaurant, located at 59 Jose de Diego Street, Cidra, PR, 00739-3241, with coordinates 18.17534222492583, -66.16067289880922.

23.11.1.   The sidewalk in question is located in front of Q' Rico Brunch & Restaurant, located at Jose de Diego Street, Cidra, PR, 00739-3241, at the following coordinates: 18.175386184543658, -66.16065546444857.

23.11.2.   The sidewalk ramp in question is located at the following coordinates: 18.175305874180186, -66.16026578758938.

23.12.   The location in question is a place of public accommodation known as La Pagoda China located at 51 Baldorioty Street, Cidra, PR 00739-3426 with coordinates 18.179762231860632, -66.16077931735478.

23.12.1.   The sidewalk in question is located in front of La Pagoda China located at 51 Baldorioty Street, Cidra, PR 00739-3426 with coordinates 18.179762231860632, -66.16077931735478.

23.13.   The location in controversy is a place of public accommodation, known as Saboreo Deli & Lunch located at Fernández Urbanization, 53 Francisco Cruz Street, Lad Ferrt, Cidra, PR 00739-0000 with coordinates 18.1780900996827, -66.15749595155972.

23.13.1.   The sidewalk in question is located in front Saboreo Deli & Lunch located at Fernández Urbanization, 53 Francisco Cruz Street, Lad Ferrt, Cidra, PR 00739-0000 with coordinates 18.1780900996827, -66.15749595155972.

23.14.   The location in question is a place of public accommodation known as Supermercado Rivera, located at Highway 173, Int. 775 Km 6.5, Rabanal Ward, San José Sector, Cidra, PR 00739-0000, with coordinates 18.161781445141447, -66.20369360692776.

23.14.1.   The sidewalk in question is located in front of Supermercado Rivera, situated at Highway 173, Int. 775 Km 6.5, Rabanal Ward, San José Sector, Cidra, PR 00739-0000, with coordinates 18.161781445141447, -66.20369360692776.

23.15.   The location in question is a place of public accommodation known as 804 Coffee Bar, located at PR Highway 1, Km 50.8, Beatriz Ward, Pepe Abad Kia Dealer, Cidra, PR 00739-0000, with coordinates 18.151053135310715, -66.10685768648676.

23.15.1.    The sidewalk in question is located in front of 804 Coffee Bar situated at PR Highway 1, Km 50.8, Beatriz Ward, Pepe Abad Kia Dealer, Cidra, PR 00739-0000, with coordinates 18.151053135310715, -66.10685768648676.

23.16.    The location in question is a place of public accommodation known as Hospital Menonita de Cidra, located at 100 Ave El Jibaro, Cidra, PR 00739, with coordinates 18.185734640290278, -66.1580276977607.

23.16.1.    The sidewalk in question is located in front of Hospital Menonita de Cidra, situated at 100 Ave El Jibaro, Cidra, PR 00739, with coordinates 18.185734640290278, -66.1580276977607.

23.16.2.    The sidewalk ramps in question are located at the following coordinates: 18.185190228131344, -66.15850001390884.

**C. Discrimination in Municipality of Cidra and other businesses against Mr. Carlos Molina due to his disability**

24.    Mr. Carlos Molina Román, a resident of Cidra, finds great joy in visiting different places, especially restaurants, recreational spaces, and various businesses within the municipality. One of his greatest pleasures is exploring new establishments, trying different foods, and enjoying the vibrant atmosphere of Cidra. These outings are not just a pastime for Mr. Molina; they serve as a way for him to momentarily disconnect from the health challenges he faces daily.

25.    Suffering from muscular dystrophy and oculocutaneous albinism, Mr. Molina experiences constant physical limitations and mobility challenges. However, when he visits a new restaurant or enjoys a meal in a place with a pleasant atmosphere, he finds a sense of normalcy, enjoyment, and relief from his struggles. Being able to spend his free

time engaging in these activities allows him to focus on the things he loves, rather than the limitations imposed by his condition.

26. Unfortunately, this enjoyment is often overshadowed by the numerous architectural barriers he encounters within the Municipality of Cidra. Instead of experiencing a smooth and enjoyable visit, his outings are frequently disrupted by accessibility challenges that make it difficult, exhausting, or even impossible for him to navigate public spaces safely.

27. One of the most frustrating and discouraging barriers he faces is the poor condition and inaccessibility of public sidewalks. Many sidewalks in Cidra are cracked, uneven, and obstructed, making it dangerous and physically straining for him to maneuver his wheelchair. Even worse, many businesses and establishments improperly use the sidewalks for parking spaces or to place objects that block access, forcing Mr. Molina to take alternative and unsafe routes or, in some cases, abandon his visits altogether.

28. Despite his desire to continue enjoying his favorite pastime, the Municipality of Cidra has failed to take meaningful action to ensure that public spaces are accessible to individuals with mobility impairments. This lack of accessibility directly impacts his independence and quality of life, as the constant struggle to navigate these spaces turns what should be a moment of relaxation into a frustrating and exhausting ordeal.

29. Additionally, even when he manages to overcome the barriers on the sidewalks and reach businesses or restaurants, Mr. Molina continues to encounter obstacles inside these establishments. Some of the most common barriers include high service counters without accessible sections, narrow aisles that make it difficult for him to move safely, and restrooms that lack proper accommodations such as grab bars and sufficient maneuvering

space. These conditions completely prevent him from fully enjoying his visit, leaving him feeling excluded and discouraged from returning.

30.    Mr. Molina feels discouraged from visiting several places located in Cidra because he knows he cannot enjoy them due to the architectural barriers present at those locations:

### *Responsibility of the Municipality of Cidra and Don Quijote Pizza LLC*
### *Don Quijote Pizza*

31.    Mr. Carlos Molina is a big fan of pizza and knows that in Cidra, Don Quijote Pizza is the perfect place to enjoy a delicious pizza. This restaurant is well-known for the quality of its dishes and its welcoming atmosphere, making it his preferred choice. In particular, he is drawn to the famous stuffed potatoes with ground beef, cheese, and broccoli, a dish he has always wanted to try. However, since November 2024, Carlos has felt discouraged from visiting due to the architectural barriers at the location. Being aware of these difficulties, he is concerned that the restaurant's access is not suitable for him, causing discomfort and preventing him from fully enjoying the experience as he desires. Nevertheless, Mr. Molina plans to visit the restaurant between June and November of this year, as he hopes that by then, these accessibility issues will have been resolved:

31.1.    Parking: Mr. Carlos Molina is aware that the designated parking in front of the sidewalk at Don Quijote Pizza is illegal, as there is no proper space allocated for vehicles to park, and the Cidra municipality does not sanction this action. This barrier directly affects Mr. Molina, who uses a wheelchair to get around. The parking area obstructs the sidewalk, making it difficult for him to move, forcing him to look for alternate routes or even discouraging him from visiting the place. Sidewalks must be free of obstacles to ensure safe mobility, especially considering his muscular dystrophy.

31.2.    Sidewalk: Mr. Carlos Molina knows that the sidewalk is in poor condition, with cracks, and is too narrow for his wheelchair, preventing him from moving without difficulty. The lack of space and the cracks on the sidewalk present a serious obstacle for him, as his muscular dystrophy affects the strength and control in his legs, making him extremely cautious to avoid falls or injuries. This limits his autonomy, making his experience at the location neither accessible nor safe, and it affects his ability to comfortably access the business, leading him to be discouraged from visiting.

31.3.    Inadequate Ramp: Mr. Carlos Molina is aware that the ramp leading to the store is in poor condition, crooked, and lacks borders, which makes it difficult for him to use it safely. Furthermore, the ramp leads to a cracked sidewalk, increasing the difficulty of moving. Due to his muscular dystrophy, he lacks the strength to control his wheelchair on such unstable and dangerous terrain, which discourages him from visiting the business.

31.3.1.    The municipality of Cidra is responsible for addressing the accessibility barriers that affect Mr. Carlos Molina. As the local government, it must ensure that public spaces, such as sidewalks and ramps, are accessible to all people, including those with disabilities. The sidewalk in poor condition, with cracks and insufficient width for wheelchair use, and the crooked ramp without proper borders are obstacles that prevent Carlos from moving safely. The municipality can implement solutions such as repairing the sidewalks to ensure they are wide, smooth, and free of cracks, and building ramps in optimal condition, with borders, proper

slopes, and non-slip surfaces. Additionally, a regular maintenance program could be established to ensure that these spaces remain in good condition. By taking these actions, the municipality would not only improve accessibility for Mr. Molina but also contribute to creating a more inclusive environment for all citizens.

31.4.    Main Entrance: Mr. Carlos Molina is aware that the entrance door of the business is too narrow for his wheelchair and has a wall without a ramp, preventing him from entering the store independently. Due to his muscular dystrophy, which affects his ability to move his legs and control his wheelchair with precision, he is forced to ask for help to enter. If there is no one available to assist him, he simply cannot access the business, limiting his ability to enjoy the service and discouraging him from visiting.

31.5.    Counter: Mr. Carlos Molina knows that the counter inside the store is too high and lacks the necessary depth for him to approach it directly with his wheelchair. This barrier directly affects Mr. Molina, who, due to his oculocutaneous albinism, experiences visual difficulties that make it harder for him to access the counter from a higher distance. Additionally, his muscular dystrophy prevents him from making quick movements or adjusting easily to limited spaces, making it difficult for him to interact with the staff or access products, affecting his experience at the business.

31.6.    Tables with Bases that Prevent Front Approach: Mr. Carlos Molina is aware that the tables inside the store have bases that prevent him from approaching them directly with his wheelchair. Due to his muscular dystrophy, which affects his

mobility and muscle strength, it becomes even more difficult for him to find a comfortable position to interact with his surroundings, as he cannot easily move towards the tables. This limits his ability to enjoy a meal or engage in any activity at the restaurant independently, which discourages him from visiting the place.

31.7.    Bathrooms: Mr. Carlos Molina is aware that the bathroom labeled as accessible is not because it does not meet the required standards, making it impossible for him to access it comfortably, which discourages him from going to the place. The following barriers are present:

31.7.1.    He knows that the access route to the bathroom is blocked by tables inside the store, preventing him from reaching the bathroom safely and independently. Due to his muscular dystrophy, Mr. Molina has difficulty maneuvering his wheelchair in narrow spaces, forcing him to ask for help or wait for the tables to be moved.

31.7.2.    He is also aware that the signage with the international disability symbol for the bathroom is not visible from the point where the tables obstruct the path. Furthermore, it is not properly located and does not have the correct size, which is a significant issue for him because, due to his oculocutaneous albinism, he experiences visual difficulties, making it harder for him to locate the accessible bathroom without asking for assistance, affecting his independence and autonomy at the location.

31.7.3.    The bathroom door is very narrow and has a difficult-to-operate handle, requiring a wrist twist, something that is problematic for him due to his muscular dystrophy, which causes pain when making unnatural

movements. This makes it impossible for him to open the door without assistance. All of these barriers affect his ability to access the bathroom independently, which discourages him from visiting the business and causes him discomfort.

31.8.   To address these barriers, firstly, the parking area should be relocated or properly designated to ensure it does not block the sidewalk, and the Municipality of Cidra should take the necessary actions to enforce this, allowing Mr. Carlos to pass through with his wheelchair. The sidewalk should be repaired and widened to eliminate cracks, ensuring a smooth and safe path for Mr. Molina, who has limited mobility due to muscular dystrophy. The ramp should be rebuilt to be level, have proper edges, and direct users to a flat surface, avoiding dangerous cracks. The main entrance should be widened to accommodate a wheelchair, and a ramp should be added to replace the wall, ensuring that Mr. Molina can enter the premises independently. The counter height should be reduced to a maximum of 36 inches to facilitate easier interaction, and it should be designed with sufficient depth to allow for frontal access. The tables should be redesigned to have bases that allow wheelchair users to approach them comfortably. Finally, the bathroom signage should be updated to ensure the characters are at a maximum height of 40 inches above the finished floor, and the bathroom door should be widened, with a handle designed to be easier to operate, eliminating the need to twist the wrist. If these barriers are removed, Mr. Carlos Molina will be able to visit Don Quijote Pizza comfortably and independently.

### *Responsibility of the Municipality of Cidra and E' Pura Cepa LLC*
### *E' Pura Cepa Restaurante*

32.    Mr. Carlos Molina wants to visit E' Pura Cepa Restaurante because it is a traditional Puerto Rican restaurant that offers excellent food with the authentic taste of grandmothers' cooking. He knows that the menu stands out for its bacalao con guanimes and that the mojitos are considered the best in all of Puerto Rico. He also appreciates that the service is excellent and that the dishes are always served hot, well-seasoned, and at good prices. However, since January 2025, he has known that this place has architectural barriers that prevent him from accessing it freely. Due to his mobility conditions and reliance on a wheelchair, these difficulties have discouraged him from visiting.In February and March of 2025, he has wanted to visit E' Pura Cepa Restaurante because it is widely recognized for preserving the essence of Puerto Rican home cooking, something he deeply values. Despite this, the architectural barriers make him feel discouraged from going.

33.    Over the next three months, he wants to visit E' Pura Cepa Restaurante because he continues to appreciate its authentic flavors, excellent service, and inviting environment. He feels drawn to the restaurant's reputation for serving food that evokes the comfort and warmth of home-cooked meals, something he values deeply. The idea of enjoying a perfectly seasoned bacalao con guanimes and a refreshing mojito in a lively yet cozy setting excites him. He also looks forward to experiencing the welcoming atmosphere and the attention to detail that makes each visit special. Even so, knowing that the restaurant has architectural barriers that limit his access makes him feel discouraged from making the trip. The barriers he is aware of are the following:

33.1.    Sidewalks with Damaged Pavement: Mr. Carlos Molina Román is aware of the poor condition of the sidewalks in front of  E' Pura Cepa Restaurante located at Hwy. #1 KM 49.8, Bo. Beatriz, Cidra, PR 00739-0000 with coordinates 18.15709744493109, -66.09821953265293, because it is cracked and with uneven pavement, which significantly affects his ability to navigate safely. His condition of muscular dystrophy affects his strength and muscle control, meaning that maneuvering over uneven and cracked surfaces requires considerable effort. These physical barriers make accessing the establishment dangerous.The uneven and deteriorated pavement makes it difficult for him to maneuver his wheelchair smoothly, requiring extra effort to avoid potential obstructions. Due to his limited upper body strength, steering over cracks and bumps becomes physically exhausting. This discourages him from visiting the establishment.

33.1.1.    Additionally, since the maintenance of the sidewalks in front of E' Pura Cepa Restaurante falls under the responsibility of the Municipality of Cidra, the municipality's continued inaction has further contributed to Mr. Carlos Molina's difficulties. By failing to repair the damaged sidewalks and allowing cracks, uneven surfaces, and other hazards to persist, the Municipality of Cidra has made this area unsafe for pedestrians. This neglect not only created obstacles for his mobility but also reinforced his sense of exclusion, as he was unable to navigate the area safely and access the restaurant with the same ease as other visitors.

33.2.    Parking Lot with Cracks, Potholes, Moisture, and Overgrown Vegetation and Sidewalk Obstruction: Mr. Carlos has noted the damaged pavement in the parking

lot, which complicates his movement. A parking lot with cracks, potholes, moisture, and overgrown vegetation creates significant challenges for Mr. Carlos due to his medical conditions. The cracks and potholes cause instability for his wheelchair, increasing the risk of getting stuck or tipping slightly, which can be dangerous given his Muscular Dystrophy, as his limited upper body strength makes it difficult to recover from sudden shifts. Moisture on the ground further complicates movement by reducing traction, making it harder for him to stop or turn safely, while overgrown vegetation obstructs his path and can entangle with his wheelchair wheels, forcing him to exert additional effort to maneuver. Additionally, vehicles parked obstruct the sidewalk, preventing Mr. Carlos Molina from moving through it safely. The lack of a clear passage forces him to navigate around the obstruction, often requiring him to move onto uneven and hazardous surfaces, increasing the difficulty and risk of movement. These obstacles make navigation cumbersome and physically exhausting, discouraging him from visiting the establishment.

33.3.  Limited Parking Spaces Marked for People with Disabilities: Mr. Molina Román acknowledges the scarcity of designated parking spaces for individuals with disabilities. The lack of sufficient reserved spots increases the likelihood of having to park farther from the entrance, which poses several challenges for him. Given his Muscular Dystrophy, transferring from the vehicle to his wheelchair requires significant effort, and a longer distance to travel adds to his physical strain. Additionally, his Oculocutaneous Albinism may affect his vision, making it harder to navigate safely across the parking lot, especially in low-light conditions

or uneven terrain. These difficulties make the process more exhausting and time-consuming, ultimately discouraging him from visiting the establishment.

33.4.  Unmarked Accessible Parking Spaces: Mr. Carlos Molina has observed that some parking spaces lack proper signage indicating accessibility. Unmarked accessible parking spaces create significant challenges for Mr. Carlos Molina. Without proper signage, other drivers unknowingly occupy the spaces he requires, forcing him to park in inconvenient and unsafe locations. Given his Muscular Dystrophy, he requires a designated space with adequate clearance to safely transfer from his vehicle to his wheelchair. When these spaces are unavailable, he struggles with limited room to maneuver, increasing his physical strain. His Oculocutaneous Albinism affects his vision, making it harder to identify suitable parking options, especially in poorly lit areas. These obstacles make parking more difficult and exhausting, discouraging him from visiting the establishment.

33.5.  No Accessible Route from the Parking Lot to the Establishment: The absence of an accessible route from the parking lot to the entrance severely limits Mr. Carlos Molina's ability to reach the building independently. Without a smooth, continuous path, he must navigate over uneven terrain, which creates instability for his wheelchair and increases his physical strain. Given his Muscular Dystrophy, he lacks the upper body strength needed to compensate for sudden shifts, making movement more exhausting and difficult. His Oculocutaneous Albinism further affects his ability to detect obstacles, increasing the risk of misjudging cracks and slopes and uneven surfaces. These barriers make access

unsafe and physically demanding, discouraging him from visiting the establishment.

33.6.   Damaged Wooden Ramp with Moisture and Uneven Surface: Mr. Carlos Molina Román encounters significant difficulties using the wooden ramp due to its poor condition. The moisture reduces traction, making it extremely difficult for him to propel himself forward, while the uneven surface creates instability that affects his wheelchair's movement. Given his Muscular Dystrophy, he lacks the upper body strength needed to compensate for sudden shifts, making it physically exhausting to maintain control. The unstable ramp increases the risk of his wheelchair slipping or tilting, creating a safety hazard. This discourages him from visiting the establishment.

33.7.   Damaged Wooden Ramp with Moisture and Uneven Surface: Mr. Carlos Molina knows that the poor condition of the wooden ramp makes it extremely difficult and unsafe to use with his wheelchair. The moisture reduces traction, making it extremely difficult for him to propel himself forward, while the uneven surface creates instability that affects his wheelchair's movement. Given his Muscular Dystrophy, he lacks the upper body strength needed to compensate for sudden shifts, making it physically exhausting to maintain control. The unstable ramp increases the risk of his wheelchair slipping and tilting, creating a safety hazard. This discourages him from visiting the establishment.

33.8.   Plants Blocking Circulation: Mr. Carlos Molina Román notices that overgrown plants obstruct circulation, significantly hindering his mobility. His wheelchair requires a clear path for safe and efficient movement, and being forced to navigate

around these obstacles demands additional effort. Given his muscular dystrophy, the extra strain required to maneuver his wheelchair increases his fatigue. His Oculocutaneous Albinism affects his vision, making it harder to detect smaller plants and branches that may pose further obstacles. This discourages him from visiting the establishment.

33.9.    Deteriorated Wooden Floor with Moisture and Uneven Surfaces at the Entrance: Mr. Carlos Molina Román is aware that the entrance has a damaged wooden floor, making it difficult to enter smoothly. The moisture and uneven areas create an unstable surface that makes his wheelchair harder to control. His Muscular Dystrophy limits his ability to stabilize himself when encountering sudden jolts, and his Oculocutaneous Albinism reduces his ability to accurately judge the depth and placement of irregularities on the floor. The additional effort required to maintain balance and maneuver safely makes entry strenuous and unsafe. This discourages him from visiting the establishment.

33.10.    Terrace Floor in Poor Condition with Moisture and Uneven Surfaces: Mr. Carlos Molina Román realizes that the terrace floor is deteriorated, with moisture and an uneven surface. The combination of moisture and uneven surfaces disrupts the smooth movement of his wheelchair, forcing him to exert excessive effort to navigate. Given his Muscular Dystrophy, he experiences fatigue more quickly, and the unstable terrain makes maintaining balance difficult. His Oculocutaneous Albinism further complicates navigation, as he struggles to perceive subtle variations in the floor's surface. The constant physical strain and discomfort discourage him from visiting the establishment.

33.11.    Wooden Post Blocking Circulation on the Terrace: Mr. Carlos Molina Román observes that a wooden post obstructs circulation on the terrace, limiting his ability to move freely. The limited space forces him to make precise movements that require additional effort and energy. His Muscular Dystrophy makes sudden stops and turns more challenging, as he lacks the strength to make quick adjustments. The obstruction reduces his ability to move freely, making navigation more complicated and physically exhausting. This discourages him from visiting the establishment.

33.12.    Terrace Bar Too High: Mr. Carlos Molina Román knows that the terrace bar is too high for him to use comfortably. His Muscular Dystrophy limits his upper body strength, making it physically demanding to reach the counter. This barrier prevents him from comfortably interacting with staff and placing orders, making the experience frustrating and physically exhausting. This discourages him from visiting the establishment.

33.13.    Terrace Bar Too Shallow: Mr. Carlos Molina Román notices that the terrace bar lacks sufficient depth, making it uncomfortable for him to position himself close enough to use it properly. His wheelchair does not fit underneath, forcing him to stretch forward in an unnatural position. Given his Muscular Dystrophy, maintaining this posture is physically straining and tiring. The lack of adequate space makes it difficult for him to use the bar comfortably, creating unnecessary discomfort. This discourages him from visiting the establishment.

33.14.    Table Arrangement Hindering Circulation: Mr. Carlos Molina Román realizes that the way the tables are arranged restricts his ability to navigate through the space.

The lack of adequate clearance forces him to make frequent adjustments to avoid obstacles, increasing his physical effort. His Muscular Dystrophy makes continuous maneuvering exhausting, and his Oculocutaneous Albinism makes it harder to judge distances accurately, increasing the risk of accidental collisions. The limited accessibility makes movement frustrating and tiring. This discourages him from visiting the establishment.

33.15.   Tables with Lower Support Bars: Mr. Carlos Molina Román knows that the tables have support bars underneath, making it difficult for his wheelchair to fit comfortably. These bars prevent his wheelchair from fitting comfortably underneath, forcing him to stretch forward in an uncomfortable posture. Given his Muscular Dystrophy, maintaining this position is physically exhausting, making it difficult for him to eat or use the table effectively. The discomfort and strain created by this barrier discourage him from visiting the establishment.

33.16.   Tall Brown Counter: Mr. Carlos Molina Román notices that the brown counter is too high, making it nearly impossible for him to use it comfortably because his Muscular Dystrophy limits his arm strength, preventing him from reaching the surface effectively. The barrier prevents him from interacting with staff and making purchases without excessive strain, making the experience inaccessible and frustrating. This discourages him from visiting the establishment.

33.17.   Shallow Brown Counter: Mr. Carlos Molina Román realizes that the brown counter lacks sufficient depth, preventing his wheelchair from fitting comfortably underneath. This forces him to reach forward in an awkward and tiring position, making any interaction with the counter strenuous. Given his Muscular

Dystrophy, maintaining this posture is physically exhausting, making any interaction with the counter difficult. The lack of adequate space makes the counter inaccessible, discouraging him from visiting the establishment.

33.18.   Counters Blocked by Tables: Mr. Carlos Molina Román is aware that some counters are obstructed by tables, making it difficult for him to access them because his wheelchair requires ample space to maneuver, and the restricted layout forces him to exert additional effort to reach the counter. Given his Muscular Dystrophy, the extra physical strain makes navigation tiring, and his Oculocutaneous Albinism makes it harder to judge clear paths. The obstacles prevent him from moving freely and accessing services comfortably. This discourages him from visiting the establishment.

33.19.   The barriers on E' Pura Cepa Restaurante could be eliminated by repaving the sidewalks to ensure a smooth and even surface, repairing the parking lot by filling cracks and potholes, eliminating moisture accumulation, and trimming overgrown vegetation. The number of designated parking spaces for people with disabilities should be increased, and all accessible parking spaces must be clearly marked with the universal disability symbol. A continuous and accessible route from the parking lot to the entrance should be established by installing a smooth, non-slip pathway. The wooden ramp must be replaced or reinforced with durable, slip-resistant material, ensuring it is stable and level. Plants obstructing circulation should be trimmed or relocated to clear pathways. The entrance and terrace flooring need to be replaced with stable, moisture-resistant material to prevent uneven surfaces. The wooden post on the terrace obstructing circulation should be

relocated to provide an unobstructed path. The terrace bar must be lowered to an accessible height, and its depth should be increased to allow comfortable use. Tables should be arranged to create sufficient space for maneuvering a wheelchair, and those with lower support bars must be replaced with accessible alternatives. The brown counters need to be lowered to an appropriate height and designed with sufficient depth to accommodate a wheelchair. Any counters obstructed by tables should be cleared to ensure unobstructed access. Implementing these solutions can significantly improve accessibility and ease of movement throughout the establishment.

### _Responsibility of the Municipality of Cidra and Flor De Maga Gastrobar LLC_
### _Flor De Maga Gastrobar_

34.  Mr. Carlos Molina is excited about visiting Flor de Maga Gastrobar because it offers an exceptional culinary experience. He knows that the food is delicious, the atmosphere is cozy, and the service is of high quality. He is particularly interested in trying the longaniza risotto croquettes and the shrimp mofongo montaditos. He is also drawn to the pork ossobuco with mamposteado risotto, known for its smooth and well-balanced flavor. To complement his meal, he considers the Old Fashioned Smoke "Five Spice" to be the perfect choice. However, since November 2024, he has known that this place has architectural barriers that limit his access. His reduced mobility and reliance on a wheelchair make these obstacles significant, which has lessened his interest in visiting. In December 2024 and January 2025, he has wanted to visit Flor de Maga Gastrobar because he enjoys discovering new dining experiences that highlight Puerto Rican flavors. He is aware about the restaurant's unique take on traditional dishes and is eager

to experience the flavors firsthand. Even so, the architectural barriers make him feel discouraged from going to Flor De Maga Gastrobar.

35.     The combination of high-quality ingredients, creative presentation, and a welcoming ambiance makes this place particularly appealing to him. Over the next two months, he wants to visit Flor de Maga Gastrobar because he continues to be drawn to its distinctive cuisine and inviting atmosphere. He appreciates the effort the restaurant puts into crafting memorable dishes and carefully pairing flavors. Despite his enthusiasm, the architectural barriers discourage him from visiting the restaurant. The barriers at Flor De Maga Gastrobar he is aware of are the following:

35.1.     Sidewalks with Cracks and Uneven Pavement: Mr. Carlos Molina Román is aware of the cracks and uneven pavement on the sidewalks in front of Flor De Maga Gastrobar located at Parcelas Gándaras, Hwy. 172 KM 12.7, Street #1, Parcel #129, Cidra, PR 00739-0000 with coordinates 18.17617127961073, -66.1568961317770. These irregular surfaces make it difficult for him to maneuver his wheelchair safely, causing instability and discomfort as he moves. The constant jolts and sudden stops generated by the rough terrain make his navigation exhausting and physically straining. Due to these challenges, he feels discouraged from visiting the establishment.

35.1.1.     The Municipality of Cidra is responsible for maintaining the sidewalks in front of Flor de Maga Gastrobar. However, its ongoing failure to address the poor condition of these pathways has significantly impacted Mr. Carlos Molina's mobility. The presence of cracks, uneven surfaces, and other structural hazards has made it difficult for him to navigate the area

safely. This lack of proper maintenance has not only created physical barriers but has also contributed to his sense of exclusion, as he cannot access the restaurant easily.

35.2.    Parking Without Vertical Signage for Disability Symbol: Mr. Carlos has noticed that the parking area lacks vertical signage displaying the universal disability symbol. As a wheelchair user, he relies on clear and visible indicators to identify designated spaces, ensuring he parks in a spot that meets his mobility needs. The absence of this signage creates confusion and forces him to search longer for an appropriate space, adding unnecessary difficulty to his visit. This situation leaves him feeling dissuaded from going to the restaurant.

35.3.    No Accessible Route from Parking to the Establishment: Mr. Molina Román realizes that there is no designated access route from the parking lot to Flor de Maga Gastrobar. Without a clear and safe path, he struggles to move from his vehicle to the entrance, encountering obstacles that make the journey complicated and physically demanding. The lack of a direct passage forces him to navigate through unsafe or inconvenient areas, making his visit unnecessarily difficult. This discourages him from going to the establishment.

35.4.    Tables with Bottom Support That Obstructs Mobility: Mr. Carlos Molina Román has observed that the tables at Flor de Maga Gastrobar have bottom supports that interfere with his wheelchair. These structures make it difficult for him to position himself comfortably enough near to the table, forcing him to sit at an uncomfortable angle or remain at a distance from the table. This prevents him

from enjoying a proper dining experience, making his time at the establishment frustrating. As a result, he feels disheartened about visiting the restaurant.

35.5.    Narrow Table Arrangement That Blocks Passage: Mr. Carlos has noted that the table distribution inside the establishment obstructs his movement. As a wheelchair user, he requires sufficient space to navigate, but the positioning of the tables forces him to take inconvenient or impractical routes, making his mobility more complicated. The constant struggle to find a clear path adds to his discomfort, discouraging him from visiting the restaurant.

35.6.    Outdoor Bar Counter Too High: Mr. Carlos Molina Román recognizes that the exterior bar counter at Flor de Maga Gastrobar is too high for him to use comfortably. Due to his seated position in a wheelchair, he is unable to reach the counter properly, making it difficult for him to order or enjoy his time at the bar. The height difference creates a physical barrier that prevents him from fully engaging with the space, making him feel excluded. Because of this, he feels unmotivated to visit the establishment.

35.7.    Outdoor Bar Counter Too Shallow: Mr. Carlos Molina Román is aware that the outdoor bar counter lacks sufficient depth, making it impractical for him to use while seated in his wheelchair. The limited space does not allow him to position himself comfortably, forcing him into an awkward posture or preventing him from accessing the counter entirely. This limitation makes it frustrating for him to engage in the bar area, leaving him dissuaded from visiting the restaurant.

35.8.    The barriers on Flor De Maga Gastrobar could be eliminated by repairing the cracked and uneven pavement on the sidewalks to create a smooth and stable

surface for safe wheelchair navigation. The parking area should have clearly visible vertical signage with the universal disability symbol to ensure designated spaces are easily identifiable. A direct and accessible route from the parking lot to the entrance must be established, allowing for a safe and obstacle-free path. Tables with bottom supports that obstruct mobility should be replaced or modified to provide adequate space for wheelchair users to sit comfortably. The table arrangement inside the establishment could be adjusted to ensure clear pathways, allowing unrestricted movement. The outdoor bar counter should be lowered to an appropriate height for wheelchair users, making it accessible and functional. Additionally, increasing the depth of the outdoor bar counter would allow for comfortable use. Implementing these modifications would remove existing barriers and improve accessibility within the establishment.

### _Responsibility of the Municipality of Cidra and Lucios Restaurant L.L.C. - Lucios Restaurant_

36. Mr. Carlos Molina is very interested in visiting Lucio's Restaurant because he knows it is a beautiful place that blends perfectly with nature. He wants to eat there, not only because of its cleanliness and excellent service but also because of the exquisite food it offers. He is particularly eager to try the grilled lobster and the white rice with beans, dishes he has heard are among the restaurant's best. He knows that Lucio's provides a warm and inviting atmosphere where customers can enjoy a high-quality dining experience, and he is excited about the possibility of visiting the establishment to enjoy its renowned cuisine.

37. However, since late February 2025, he has been aware of the architectural barriers present in the establishment, which have discouraged him from visiting. In March 2025, he wanted to go but decided not to because he knew these barriers would limit his access

and mobility within the restaurant. As a wheelchair user with muscular dystrophy, he feels discouraged from exposing himself to a situation where he would not be able to move independently or enjoy the space on equal terms. Despite this, he remains hopeful and is planning to visit the restaurant in three months, looking forward to savoring its grilled lobster and white rice with beans while enjoying the pleasant ambiance. Mr. Molina is aware of the following barriers at Lucio's Restaurant:

37.1.   Narrow and Obstructed Sidewalks: Mr. Carlos Molina is aware that the sidewalks in front of the restaurant are too narrow and obstructed by white concrete planters with trees in the middle, making them unusable for his wheelchair mobility. These physical barriers prevent him from safely traveling along the sidewalk, forcing him to perform complex maneuvers to try to move forward. Due to his muscular dystrophy, any movement requiring additional effort causes fatigue and muscle strain, further hindering his mobility. Additionally, the presence of cracks, potholes, and overgrown vegetation makes his path even more difficult, as his wheelchair wheels can get caught in the uneven surfaces, causing abrupt jolts that affect his stability and result in pain in his back and arms. These conditions make the sidewalk completely inaccessible, forcing him to seek alternative and more dangerous routes.

37.2.   Parking Spaces Blocking the Sidewalk: Mr. Carlos Molina is aware that in front of the restaurant, there are three parking spaces marked with the international accessibility symbol painted directly on the sidewalk, meaning that these spaces completely occupy the pedestrian area. This obstruction prevents him from using the sidewalk and forces him to move onto the street, exposing him to traffic and

putting his safety at risk. Due to his oculocutaneous albinism, his reduced vision makes it difficult for him to accurately judge distances and quickly assess the movement of vehicles, increasing the likelihood of accidents when navigating the roadway. Additionally, since he cannot use the sidewalk, he is forced to take longer routes to bypass the obstacles, causing excessive physical strain and unnecessary muscle fatigue due to his muscular dystrophy. This situation severely limits his independence and safe access to the restaurant.

37.3.    Hallway With Carpets That Obstruct Mobility: Mr. Carlos Molina is aware that one of the hallways that is part of the access route inside Lucio's Restaurant has a brown carpet with black edges in the middle and an additional larger gray carpet with black edges. These carpets significantly affect his mobility because, due to his muscular dystrophy, he has a substantial reduction in muscle strength, making movement more difficult for him than for a person without a disability. Since he uses a wheelchair, these carpets create additional resistance to the movement of the wheels, forcing him to exert more effort to move forward. This excessive effort causes physical fatigue and muscle pain, further hindering his independence when trying to navigate the establishment.

37.4.    Tightly Arranged Seating In The Dining Area: Mr. Carlos Molina is aware that the seating inside Lucio's Restaurant, particularly in the dining area, is too tightly arranged, obstructing circulation. Because he uses a wheelchair, the lack of adequate space prevents him from maneuvering freely and accessing a table without difficulty. This situation forces him to make unnecessary and abrupt movements with his wheelchair, which can cause muscle pain and strain on his

limbs due to his muscular dystrophy. Additionally, the lack of accessibility prevents him from enjoying the dining experience comfortably, as his wheelchair cannot be positioned properly, forcing him to remain in an uncomfortable posture for extended periods.

37.5.   Excessively High Counters: Mr. Carlos Molina is aware that the orange counter inside the bar at Lucio's Restaurant, as well as another brown counter with a white surface designated for transactions and customer service, are excessively high. Due to his muscular dystrophy, his arms have reduced strength, making it difficult for him to lift them easily to reach elevated surfaces. This barrier excludes him from full access to the restaurant's services, as he cannot place objects on the counter or safely receive items such as food or drinks. The excessive effort he would have to exert to try to reach the counter causes fatigue and physical discomfort, affecting his ability to interact with the restaurant staff independently.

37.6.   Counters Without Adequate Depth: Mr. Carlos Molina is aware that the orange counter inside the bar at Lucio's Restaurant, as well as another brown counter with a white surface designated for transactions and customer service, lack sufficient depth. This directly impacts his ability to approach the counters in his wheelchair, as the lack of space underneath prevents his legs and the base of his wheelchair from being properly accommodated. Due to his muscular dystrophy, any forced movement to reach the counter can cause him pain and strain in his arms and torso. Additionally, this barrier forces him to stretch uncomfortably, increasing the risk of losing balance or experiencing extreme fatigue, preventing him from completing transactions or receiving service on equal terms.

37.7.    Lack Of An Accessible Route From The Sidewalk To The Interior Of The Restaurant: Mr. Carlos Molina is aware that there does not appear to be an accessible route from the sidewalk to the interior of Lucio's Restaurant, as there are no ramps connecting the first floor to the second, or if they exist, there is no signage indicating their location. As a wheelchair user, the absence of a proper ramp prevents him from independently entering the restaurant, leaving him completely excluded from the establishment. Due to his muscular dystrophy, he requires a smooth and continuous surface to move without excessive effort, as any attempt to navigate a step without assistance could result in a fall or injury. The lack of an accessible route causes him frustration and forces him to rely on others to access a space he has the right to enter without obstacles.

37.8.    Lack Of Signage Indicating The Location Of The Accessible Restroom: Mr. Carlos Molina is aware that inside Lucio's Restaurant, there is no signage indicating the location of the accessible restroom. This lack of information directly affects his ability to locate a restroom suited to his needs, causing him anxiety and discomfort. Due to his muscular dystrophy, his mobility is reduced, and each movement requires considerable effort, so he cannot move unnecessarily in search of an accessible restroom. Additionally, if the restroom is not clearly marked and he has to travel long distances to find it, he is exposed to excessive fatigue or even an episode of muscle weakness that could prevent him from reaching the restroom in time, affecting his dignity and physical well-being.

37.9.    To ensure full accessibility at Lucio's Restaurant and compliance with ADA standards, the sidewalk in front of the restaurant must be widened and cleared of

obstructions such as planters, cracks, potholes, and overgrown vegetation to provide a smooth and unobstructed pedestrian path. The parking spaces currently occupying the sidewalk must be relocated to designated accessible areas within the parking lot, ensuring they do not block pedestrian access. Inside the restaurant, all carpets in hallways must be removed or replaced with low-resistance, non-slip flooring to facilitate wheelchair mobility. Seating in the dining area must be rearranged to provide adequate maneuvering space for wheelchair users, allowing unrestricted access to tables. The excessively high orange bar counter and the brown transaction counter must be lowered to an accessible height, ensuring customers using wheelchairs can interact with staff without unnecessary strain. Additionally, these counters must be modified to include sufficient depth, allowing for a proper frontal approach and preventing discomfort or excessive stretching. A clearly marked, properly constructed ramp must be installed to provide an accessible route from the sidewalk to the restaurant's interior, ensuring wheelchair users can enter independently. Inside the establishment, clear and visible signage must be placed to indicate the location of the accessible restroom, eliminating unnecessary effort and ensuring that customers with mobility impairments can locate the facility without difficulty. These modifications are essential to remove existing barriers, provide equal access, and ensure a safe and inclusive environment for all individuals, including Mr. Carlos Molina.

### *Responsibility of the Municipality of Cidra and Colmado Morales, Inc.*
### *Morales Bar*

38.    Mr. Carlos Molina is aware of Morales Bar and has wanted to visit it since December 2024 because he knows about its peaceful and welcoming small-town atmosphere, which he finds appealing for enjoying a relaxed and pleasant time. He is also drawn to the establishment for its high-quality cocktails and liquors, which he has heard are well-prepared and diverse. Additionally, he is aware that on certain days, Morales Bar brings in live music groups to enhance the ambiance, something that particularly interests him as he enjoys social settings with good music and a vibrant yet cozy environment. The combination of delicious drinks, a lively atmosphere, and great live music makes Morales Bar an ideal place for him to unwind and enjoy a night out with friends.

39.    However, since learning about the barriers in December 2024, he has wanted to visit Morales Bar multiple times, particularly in January, February, and March 2025, but each time, he immediately feels discouraged. Knowing that the establishment has accessibility barriers, he feels dissuaded from going, as he is fully aware that he would be exposing himself to a situation where he would face difficulties moving around freely and comfortably. His knowledge of these barriers, combined with the risk of encountering a discriminatory situation due to both the physical limitations imposed by the establishment and his own health conditions, ultimately prevents him from going. Instead of looking forward to enjoying the space like any other patron, he experiences frustration and exclusion, as he knows he will not be able to navigate the venue independently or fully participate in the social atmosphere. Despite this, he is planning to visit Morales Bar in four months, hoping to enjoy the great live music, the welcoming environment, and the

carefully crafted cocktails that have made the place so popular. Mr. Molina is aware of the following barriers at Morales Bar:

39.1.    Obstacles on the Sidewalk: Mr. Carlos Molina is aware that outside Morales Bar, chairs and tables obstruct the entire sidewalk, making it impossible for him to move safely in his wheelchair. Additionally, the sidewalk is in poor condition, with cracks and potholes that make navigation difficult and physically exhausting due to his Muscular Dystrophy. To make matters worse, vehicles are frequently parked illegally in front of the bar, blocking access and forcing him into unsafe situations near traffic. Despite knowing about these barriers, the Municipality of Cidra has failed to act, allowing these obstructions to persist and perpetuating discrimination against Mr. Molina by denying him equal access to public spaces.

39.1.1.    Mr. Carlos Molina is aware that outside Morales Bar, chairs and tables are often placed along the entire sidewalk, completely obstructing it. As a wheelchair user, this barrier prevents him from moving safely and without interruptions. Instead of having a clear and accessible path, he is forced to find alternative routes, which often require him to maneuver through narrow spaces or turn back entirely. His condition of Muscular Dystrophy makes it physically exhausting for him to navigate around obstacles, and the lack of a clear path adds unnecessary strain to his daily mobility. Additionally, the sidewalk is in poor condition, with cracks and potholes that create further barriers. These irregularities make it difficult for him to push his wheelchair forward smoothly, increasing the risk of getting stuck or losing control. Instead of being able to move freely and safely, he is

constantly forced to struggle against these barriers, making what should be a simple task unnecessarily difficult.

39.1.2.   On top of these obstacles, Mr. Molina is also aware that vehicles are frequently parked illegally in front of Morales Bar, further restricting his ability to navigate the area. These vehicles block the sidewalk and the road, preventing him from having a safe space to board or exit a vehicle properly. Since he uses a wheelchair, he needs enough space to transfer safely, but the illegally parked cars make this impossible. When vehicles occupy the only accessible areas, he is left with no choice but to attempt unsafe maneuvers or rely on others for assistance. This forces him into dangerous situations where he must move closer to traffic or find an alternative route that is not designed for wheelchair users. Instead of being able to move independently and safely like others, he faces constant barriers that prevent him from having the same access to public spaces.

39.1.3.   The Municipality of Cidra is fully aware of these conditions yet has done nothing to address them. It has allowed businesses to obstruct the sidewalks, failed to maintain accessible pathways, and neglected to enforce laws against illegal parking. By ignoring these persistent barriers, the municipality perpetuates discrimination against Mr. Molina, effectively denying him the right to move freely and safely in his own community. Rather than ensuring that public spaces are accessible to everyone, it has chosen to disregard the needs of individuals with

disabilities, leaving Mr. Molina and others in similar situations excluded and at risk.

39.2.    Limited Space Inside the Establishment: Mr. Carlos Molina is aware that inside Morales Bar, there is little space to move around due to the overcrowding of chairs, tables, and sound equipment. Due to his condition of Muscular Dystrophy and the fact that he uses a wheelchair to move, the lack of space prevents him from navigating freely within the establishment. This barrier forces him to maneuver with difficulty around obstacles, increasing the risk of getting stuck or being unable to access certain areas of the venue.

39.3.    High and Shallow Counter: Mr. Carlos Molina is aware that the counter for the bar, customer service, and transactions inside Morales Bar is too high and lacks sufficient depth for a frontal approach. Since he uses a wheelchair, this barrier prevents him from comfortably reaching the counter, making it difficult for him to access the services provided there. The counter's insufficient depth prevents him from approaching it directly with his wheelchair. As a result, he must either attempt uncomfortable maneuvers or rely on others to complete basic transactions.

39.4.    Obstacles in Front of the Counter: Mr. Carlos Molina is aware that several chairs are placed in front of the counter at Morales Bar, obstructing a frontal approach. As a wheelchair user, this barrier prevents him from positioning himself properly to use the counter, forcing him to stay at a distance that makes it uncomfortable or impossible to use the service. Additionally, the chairs are too high for a person

with mobility impairments to use, further limiting his options within the establishment.

39.5.  Lack of a Ramp at the Entrances: Mr. Carlos Molina is aware that all six identifiable entrances to Morales Bar have a step or a concrete threshold and none have a ramp. Since he uses a wheelchair for mobility, the absence of a ramp prevents him from entering the establishment independently. This barrier forces him to rely entirely on third parties to lift his wheelchair and assist him in entering, limiting his autonomy and his right to access the venue on equal terms.

39.6.  Lack of Signage for an Accessible Entrance: Mr. Carlos Molina is aware that Morales Bar does not have signage indicating an accessible entrance for individuals with disabilities. As a wheelchair user, this barrier prevents him from clearly identifying whether there is an alternative, more accessible way to enter. The absence of this signage leaves him uncertain and forces him to face the steps at all entrances without being able to identify a viable option for autonomous access.

39.7.  Lack of Signage for an Accessible Restroom: Mr. Carlos Molina is aware that Morales Bar does not have signage indicating the location of an accessible restroom for individuals with disabilities. As a wheelchair user, this barrier makes it difficult for him to determine whether an accessible restroom is available, forcing him to explore the venue or ask third parties for assistance. The lack of signage exposes him to the possibility of not finding an accessible restroom within the establishment, affecting his comfort and dignity when needing these facilities.

39.8.    To ensure accessibility and compliance with disability rights, several solutions must be implemented to address the barriers present at Morales Bar and the surrounding sidewalk. The sidewalk must be kept clear of tables, chairs, and other obstructions to allow individuals using mobility devices to pass safely. Additionally, the pavement must be repaired to eliminate cracks and potholes that make navigation difficult and dangerous for wheelchair users. To prevent illegal parking from further restricting access, the Municipality of Cidra must enforce parking regulations and install clear signage indicating no-parking zones. Within the establishment, the limited interior space should be reorganized by reducing unnecessary furniture and ensuring an accessible path of travel. The bar counter must be modified to provide a lower section with adequate depth, allowing wheelchair users to approach and use it comfortably. Chairs blocking the counter must be removed or repositioned to ensure a clear space for individuals who use mobility devices. At least one entrance should be equipped with a properly designed ramp to provide an independent and safe entry for wheelchair users, and all accessible features should be clearly marked with appropriate signage, including an accessible entrance and restroom. These measures are necessary to eliminate the barriers that prevent Mr. Molina and other individuals with disabilities from accessing and using Morales Bar on equal terms, ensuring their right to mobility, safety, and dignity.

### *Responsibility of the Municipality of Cidra and Nonna's Pizza A Leña LLC - Nonna's Pizza A Leña*

40.    Mr. Carlos Molina is aware of Nonna's Pizza A Leña and has wanted to visit it since January 2025 because he knows about its inviting and cozy atmosphere, which makes it

an ideal place to enjoy a good meal in a pleasant setting. He is particularly drawn to the establishment's signature wood-fired pizzas, which he has heard are of excellent quality, as well as its refreshing cocktails that complement the dining experience. Additionally, he is interested in trying the chef's special dish, Surf & Turf, which is known for its combination of flavors and presentation. The thought of enjoying a warm, freshly made pizza, paired with a perfectly mixed cocktail in such a welcoming environment, excites him. However, despite his enthusiasm for visiting the restaurant, he has not been able to do so due to the accessibility barriers he has learned about.

41.    Since becoming aware of these barriers in January 2025, he has wanted to visit Nonna's Pizza A Leña in February and March 2025, but each time, he immediately feels discouraged. Knowing that the establishment has accessibility barriers, he feels dissuaded from going, as he is fully aware that he would be exposing himself to a situation where he would face difficulties moving around freely and comfortably. His knowledge of these barriers, combined with the risk of encountering a discriminatory situation due to both the physical limitations imposed by the establishment and his own health conditions, ultimately prevents him from going. Instead of looking forward to enjoying the space like any other patron, he experiences frustration and exclusion, as he knows he will not be able to navigate the venue independently or fully participate in the dining experience. Despite these challenges, he is planning to visit Nonna's Pizza A Leña in three months, hoping to enjoy its renowned wood-fired pizzas, the chef's signature Surf & Turf dish, and the refreshing cocktails that perfectly complement the meal. Mr. Molina is aware of the following barriers at Nonna's Pizza A Leña:

41.1.    Deteriorated and Overgrown Sidewalk in Front of Nonna's Pizza A Leña: Mr. Carlos Molina is aware that the sidewalk in front of Nonna's Pizza A Leña is in a state of severe disrepair, with overgrown vegetation, cracks, and broken sections that make it impassable for wheelchair users. These conditions force him to navigate through the irregular parking area or move onto the road, exposing him to unstable surfaces and vehicle traffic. As a wheelchair user with Muscular Dystrophy, these obstacles make movement physically exhausting, requiring excessive effort to maneuver around debris and uneven pavement, increasing muscle strain and fatigue. The instability of the broken sidewalk also causes abrupt jolts to his wheelchair, leading to pain in his back and arms. Despite being aware of these hazardous conditions, the Municipality of Cidra has taken no action to repair or maintain the sidewalk, allowing barriers that restrict mobility and safe passage to persist. By neglecting the necessary upkeep of accessible infrastructure, the municipality reinforces systemic exclusion, denying Mr. Molina equal access to public spaces and perpetuating the discrimination he faces daily.

41.1.1.    Mr. Carlos Molina is aware that the sidewalk in front of Nonna's Pizza A Leña has broken sections and is overgrown with vegetation, creating an impassable route for wheelchair users. As a wheelchair user, this condition severely affects him, as he does not have a level and accessible surface to move safely. Due to the deteriorated sections and vegetation obstructing the path, he is forced to travel through the irregular parking area or the road, exposing himself to unstable surfaces and vehicle traffic. His

Muscular Dystrophy makes any additional maneuver or sudden change in his path physically exhausting, increasing his vulnerability to accidents.

41.1.2.    Despite being aware of this issue, the Municipality of Cidra has taken no action to address it, allowing these hazardous conditions to persist. By failing to provide accessible infrastructure, the municipality not only disregards the safety and mobility of individuals with disabilities but also reinforces systemic exclusion. Mr. Molina is forced to navigate unsafe environments that others are not subjected to, making his daily activities significantly more difficult. This negligence denies him equal access to public spaces and creates unnecessary barriers that limit his autonomy and independence. The continued inaction of the Municipality of Cidra perpetuates the discrimination suffered by Mr. Molina, reinforcing a cycle of inaccessibility and exclusion that prevents him from enjoying the same rights as other citizens.

41.2.    Uneven Ground in the Outdoor Area: Mr. Carlos Molina is aware that Nonna's Pizza A Leña has an outdoor section covered by a white tent, where the ground is unpaved and consists of irregularly sized stones. Due to his Muscular Dystrophy and the fact that he uses a wheelchair, this unstable surface directly affects his mobility, as his wheelchair loses balance when moving through the area. The lack of stability forces him to exert additional effort to maintain control of his wheelchair, causing fatigue and physical strain. Furthermore, the constant impact of the wheels against the stones accelerates wear and tear on his mobility device,

requiring frequent and costly repairs that could be avoided if the surface were paved and leveled.

41.3.  High Counter: Mr. Carlos Molina is aware that the bar, transaction, and customer service counter at Nonna's Pizza A Leña is too high. As a wheelchair user, this barrier prevents him from adequately reaching the counter, making it difficult for him to place orders, receive service, and make payments without the assistance of third parties. His Muscular Dystrophy reduces his arm strength, making it physically exhausting and painful to reach up to the counter. This situation puts him in an uncomfortable and unnecessary position of dependence, limiting his autonomy and ability to enjoy the services at Nonna's Pizza A Leña like any other customer.

41.4.  Counter Lacking Sufficient Depth: Mr. Carlos Molina is aware that the bar counter at Nonna's Pizza A Leña does not have enough depth for a frontal approach. Since he uses a wheelchair, the lack of space beneath the counter prevents him from positioning himself directly in front, forcing him to remain at an awkward distance and making interactions with staff difficult. His Muscular Dystrophy makes maintaining an uncomfortable posture for long periods cause muscle tension and pain. This barrier forces him to rely on third parties to receive and handle purchased products, restricting his independence and dignity as a customer.

41.5.  Hanging Chairs Blocking the Counter: Mr. Carlos Molina is aware that Nonna's Pizza A Leña has hanging chairs in front of the counter, preventing a frontal approach. As a wheelchair user, this barrier completely blocks his access, as he

cannot pass between or remove the chairs easily. Due to his Muscular Dystrophy, maneuvering around obstacles requires extra effort, causing him fatigue and discomfort. This lack of accessibility limits his ability to receive direct service at the counter, affecting his right to access Nonna's Pizza A Leña's services under equal conditions.

41.6.   Inability to Use the Hanging Chairs: Mr. Carlos Molina is aware that the hanging chairs at Nonna's Pizza A Leña are too high and unstable. Due to his Muscular Dystrophy, he has limited muscle control and balance, making it unsafe for him to use them without the risk of falling. Additionally, the instability of these chairs increases his insecurity when attempting to sit, causing anxiety and stress as he does not have a safe seating option inside the establishment. The lack of accessible seating forces him to remain in his wheelchair in uncomfortable spaces or leave the service area.

41.7.   Lack of Parking Signage: Mr. Carlos Molina is aware that the parking area at Nonna's Pizza A Leña does not have designated or marked accessible parking spaces for people with disabilities. As a wheelchair user, the lack of signage prevents him from identifying whether a space is available for his use, forcing him to compete with other vehicles for a spot without any accessibility guarantees. This creates additional stress and makes accessing Nonna's Pizza A Leña more difficult, as, without a clearly designated area for people with mobility impairments, he may find himself in spaces that do not allow safe unloading.

41.8.   Inadequate Parking Space Dimensions: Mr. Carlos Molina is aware that the parking spaces at Nonna's Pizza A Leña do not meet the required dimensions for

use by individuals with disabilities. As a wheelchair user, this barrier prevents him from having a space wide enough to open his vehicle doors, safely exit, and transfer into his wheelchair without difficulty. His Muscular Dystrophy prevents him from making quick or forced movements, so the lack of adequate space puts his stability and personal safety at risk.

41.9.    Irregular and Rocky Parking Surface: Mr. Carlos Molina is aware that the parking area at Nonna's Pizza A Leña has an uneven and rocky surface. As a wheelchair user, this condition affects his mobility by making his device unstable, making it difficult to move and increasing the risk of getting stuck or losing control. His Muscular Dystrophy makes him more prone to fatigue, so any additional effort to navigate an unstable surface represents unnecessary physical strain.

41.10.    Lack of an Accessible Route from the Parking Lot: Mr. Carlos Molina is aware that there is no accessible route from the parking area to the interior of Nonna's Pizza A Leña, as the entire area has an irregular and rocky surface. As a wheelchair user, this condition prevents him from safely and seamlessly moving from his vehicle to the entrance of Nonna's Pizza A Leña, forcing him to rely on the assistance of others. His Muscular Dystrophy limits his endurance for moving across unstable terrain, increasing his risk of accidents or falls.

41.11.    Lack of Accessible Restroom Signage: Mr. Carlos Molina is aware that Nonna's Pizza A Leña does not have signage indicating the presence of an accessible restroom for people with disabilities. As a wheelchair user, this lack of information prevents him from knowing whether he can use the facilities adequately. The absence of signage forces him to rely on third parties to find out

if there is an accessible restroom, affecting his autonomy and dignity. Additionally, his Muscular Dystrophy makes it difficult for him to travel long distances searching for a restroom, so the lack of information exacerbates his discomfort and affects his right to accessible facilities.

41.12.   To ensure accessibility at Nonna's Pizza A Leña, a sidewalk must be installed in front of the establishment to provide a safe, level path for wheelchair users. The outdoor area under the white tent should be paved to eliminate instability, while the parking lot must include properly marked accessible spaces with the correct dimensions and a smooth, firm surface. A clear, accessible route should connect the parking area to the entrance. The counter must be lowered and provide sufficient depth for a frontal approach, and the hanging chairs blocking access should be removed or repositioned. Stable, accessible seating must be available as an alternative. Inside, clear signage should indicate the location of an accessible restroom. The Municipality of Cidra must enforce accessibility standards to prevent continued exclusion, ensuring Nonna's Pizza A Leña provides equal access to all individuals.

### _Responsibility of the Municipality of Cidra and Ñao Kitchen Art L.L.C._
### _Ñao Kitchen Art_

42.   Mr. Carlos Molina is aware of Ñao Kitchen Art and has wanted to visit it since December 2024 because he knows it is a very cozy place with a welcoming atmosphere and attentive staff that enhance the dining experience. He has also heard excellent reviews about their sushi and is particularly interested in trying the Matatán, a highly recommended dish, especially for those who prefer sushi options without raw ingredients. Additionally, he would like to explore the restaurant's diverse culinary offerings and

experience the flavors that have made it a popular dining spot. The combination of high-quality food, great service, and a warm ambiance makes Ñao Kitchen Art an appealing destination for him. However, despite his enthusiasm for visiting, he has been unable to do so due to the accessibility barriers he has learned about.

43. Since becoming aware of these barriers in December 2024, he has wanted to visit Ñao Kitchen Art in January, February, and March 2025, but each time he considers it, he immediately feels discouraged. Due to his knowledge of the barriers, he feels dissuaded from going, as he knows that exposing himself to this situation would mean facing difficulties in moving freely and comfortably within the establishment. His awareness of these barriers, combined with the risk of experiencing discrimination due to the physical limitations imposed by the restaurant and his own health conditions, ultimately prevents him from going. Instead of feeling excited about the experience, he feels frustration and exclusion, knowing that he would not be able to navigate the space independently or fully enjoy the atmosphere and food like any other customer. Despite these obstacles, he is planning to visit Ñao Kitchen Art in three months, looking forward to enjoying its inviting ambiance, trying the highly recommended Matatán sushi, and indulging in the restaurant's renowned culinary offerings. Mr. Molina is aware of the following barriers at Ñao Kitchen Art:

43.1.  Narrow and Damaged Sidewalk: Mr. Carlos Molina is aware that the sidewalk in front of Ñao Kitchen Art is narrow, cracked, and practically nonexistent, with uneven surfaces and potholes. As a wheelchair user with Muscular Dystrophy, these conditions make movement physically exhausting and unsafe, increasing his risk of getting stuck or injured. Despite knowing about these hazards, the

Municipality of Cidra has taken no action, allowing this barrier to persist and systematically excluding Mr. Molina and others with disabilities from safely accessing public spaces. By neglecting its duty to ensure accessibility, the municipality reinforces discrimination, limiting his autonomy and subjecting him to risks that others do not face, further marginalizing people with disabilities in society.

43.1.1.    Mr. Carlos Molina is aware that the sidewalk in front of Ñao Kitchen Art is narrow, cracked, practically nonexistent, and has uneven surfaces and potholes. As a wheelchair user, this barrier prevents him from moving safely, as there is not enough stable space for him to navigate without difficulty. His Muscular Dystrophy makes sudden movements difficult, and traveling on a damaged sidewalk causes significant physical strain, making movement exhausting and causing muscle tension. Every uneven surface or crack presents an obstacle that compromises his stability and can cause his wheelchair to get stuck, exposing him to accidents and dangerous situations that people without disabilities do not face.

43.1.2.    Despite being aware of these hazardous conditions, the Municipality of Cidra has taken no action to address them, allowing this discriminatory barrier to persist. By failing to maintain and ensure accessible sidewalks, the municipality systematically excludes Mr. Molina and others with disabilities from accessing public spaces safely and independently. The neglect of this fundamental accessibility requirement forces Mr. Molina to navigate unsafe environments that able-bodied individuals do not have to

endure, reinforcing a pattern of exclusion. The municipality's inaction perpetuates discrimination by denying Mr. Molina equal access to the community, limiting his autonomy, and placing him in constant danger. This negligence does not only affect him individually but also reflects a broader disregard for the rights and dignity of people with disabilities, further marginalizing them in society.

43.2.   Lack of Accessible Route from the Sidewalk to the Interior: Mr. Carlos Molina is aware that there is no accessible route from the sidewalk to the interior of Ñao Kitchen Art, as the path is unpaved, has potholes and uneven surfaces, and there are also obstacles such as two black trash bins located in front of one of the entrances. As a wheelchair user, this barrier prevents him from reaching the entrance independently, forcing him to rely on third parties to help him maneuver around obstacles. His Muscular Dystrophy limits his ability to navigate rough surfaces easily, requiring excessive physical effort and causing premature fatigue. This situation forces him to face unnecessary risks just to access the establishment.

43.3.   Lack of Signage Indicating the Accessible Route: Mr. Carlos Molina is aware that Ñao Kitchen Art does not have signage indicating which path is accessible for people with disabilities. As a wheelchair user, this lack of information prevents him from identifying a safe entry route, forcing him to move through areas that may be inaccessible or dangerous. His Muscular Dystrophy makes unnecessary detours or additional travel physically exhausting, causing muscle fatigue and

discomfort. The absence of signage forces him to rely on third parties to find a possible accessible entrance, further limiting his independence.

43.4.  High Counter: Mr. Carlos Molina is aware that the customer service and transaction counters at Ñao Kitchen Art are too high. As a wheelchair user, this barrier prevents him from reaching the counter adequately, making it difficult for him to place orders, receive assistance, and make transactions without the help of others. Due to his Muscular Dystrophy, his arm strength is reduced, preventing him from extending or lifting himself without experiencing exhaustion and physical discomfort. Attempting to reach the counter causes strain on his weakened muscles, leading to fatigue and pain in his limbs. This situation places him in an unnecessarily dependent and uncomfortable position, limiting his autonomy and his right to receive service on equal terms.

43.5.  Counter Lacking Sufficient Depth: Mr. Carlos Molina is aware that the counters at Ñao Kitchen Art do not have enough depth to allow a frontal approach. As a wheelchair user, the lack of space beneath the counter prevents him from positioning himself comfortably in front of it, forcing him to stay at an awkward distance that makes interacting with staff difficult. His Muscular Dystrophy makes it painful and physically taxing to maintain the awkward posture required to reach the counter. This causes tension in his neck, back, and shoulders after even brief interactions. The inability to approach the counter properly prevents him from safely handling his purchased items, affecting his independence and forcing him to rely on third parties to receive and manage his belongings.

43.6.    Lack of Accessible Restroom Signage: Mr. Carlos Molina is aware that Ñao Kitchen Art does not have signage indicating the presence of an accessible restroom for people with disabilities. As a wheelchair user, this lack of information prevents him from knowing whether he will be able to use the restroom appropriately, forcing him to move unnecessarily within the establishment in search of a facility that may not be accessible. Due to his Muscular Dystrophy, unnecessary movement in an inaccessible environment causes muscle fatigue and significant physical strain. Additionally, the uncertainty of whether he will have access to a restroom creates stress and anxiety, affecting his dignity and comfort during his visit.

43.7.    Lack of Parking Signage: Mr. Carlos Molina is aware that the parking area at Ñao Kitchen Art does not have designated or marked accessible parking spaces for people with disabilities. As a wheelchair user, the lack of signage prevents him from identifying whether an appropriate parking space is available, forcing him to search for alternatives in areas not designed for his mobility. The absence of marked spaces exposes him to parking in locations that may complicate his ability to exit his vehicle, requiring him to perform difficult maneuvers that, due to his Muscular Dystrophy, are exhausting and potentially dangerous.

43.8.    Inadequate Parking Space Dimensions: Mr. Carlos Molina is aware that the parking spaces at Ñao Kitchen Art do not meet the required dimensions for people with disabilities. As a wheelchair user, this barrier prevents him from having a space wide enough to open his vehicle doors, exit safely, and transfer into his wheelchair without difficulty. His Muscular Dystrophy affects his ability to make

quick or abrupt movements, so the lack of properly sized parking spaces forces him to perform strained maneuvers that increase fatigue and can cause muscle pain. This barrier directly compromises his safety and ability to access the establishment independently.

43.9.   Uneven Parking Surface: Mr. Carlos Molina is aware that the parking lot at Ñao Kitchen Art has an uneven surface with potholes and cracks. As a wheelchair user, this condition affects his mobility by making his device unstable, making movement difficult and increasing the risk of getting stuck or losing control. His Muscular Dystrophy makes him more prone to fatigue and prevents him from making quick posture adjustments, which causes strain in his arms and back as he tries to stabilize his wheelchair on the uneven surface. Every additional effort required to overcome these irregularities adds unnecessary physical strain that affects his well-being.

43.10.   To ensure accessibility at Ñao Kitchen Art, the sidewalk in front of the establishment must be widened, repaved, and leveled to provide a safe and stable surface for wheelchair users. A properly paved and unobstructed accessible route must be established from the sidewalk to the entrance, removing obstacles such as trash bins and ensuring signage clearly indicates the accessible path. The parking lot must include properly marked accessible spaces with the correct dimensions, a smooth and even surface, and a direct accessible route to the entrance. The counters must be modified to include a lower section at an accessible height with sufficient depth for a frontal approach. Inside, clear signage must indicate the location of an accessible restroom. The Municipality of Cidra must enforce

accessibility regulations and take action to remove these barriers, ensuring Ñao Kitchen Art and its surrounding area are fully accessible, preventing further exclusion and discrimination against people with disabilities.

### _Responsibility of the Municipality of Cidra and Junta De Titulares Villa Del Carmen Mall LLC - Villa del Carmen Mall; Misangeles Corp. - Carvel; Panera MS Corp. - Iíbaro_

44.  Mr. Carlos Molina intends to visit Villa del Carmen Mall, but since January of this year, he has been discouraged from doing so due to the architectural barriers present. He knows that this shopping center is truly fabulous. Although it is small, it holds great value, offering a variety of services and amenities that make it special. It features a charming café, a delicious pizzeria, a well-stocked pharmacy, and even a tutoring center that helps those in need of academic support. Additionally, it offers an excellent variety of snacks and emergency items, making it a very practical place in times of need. Undoubtedly, despite the challenges, Villa del Carmen Mall has much to offer to those who visit, but the follows architectural barriers do difficult:

44.1.  The barriers present on the sidewalk around Villa del Carmen Mall represent a significant obstacle for Mr. Carlos Molina, who, due to his muscular dystrophy, uses a wheelchair to move around. The three main barriers he faces on the sidewalk are its obstruction, the slippery surface, and the unevenness caused by cracks and potholes. The municipality of Cidra must take responsibility to prevent the following barriers, which are difficulties that directly affect Mr. Carlos's ability to move with comfort and safety, discouraging him from visiting the mall:

44.1.1.  Sidewalk Obstruction: Mr. Carlos Molina is aware that the sidewalk around Villa del Carmen Mall is blocked by signs and poles. This creates a constant obstacle for him, as being in a wheelchair, he is forced to

maneuver around these obstacles, interrupting his movement. Due to his muscular dystrophy, this type of barrier prevents him from moving easily, discouraging him from visiting the mall. It is important to note that the responsibility to ensure the sidewalks are accessible and free of obstructions lies with the municipality of Cidra, who must oversee the accessibility of its infrastructure.

44.1.2.    Slippery Surface: Mr. Carlos Molina is also aware that the sidewalk around Villa del Carmen Mall has grass, making it slippery. Due to his difficulty maintaining balance, using a wheelchair further complicates his movement on this surface. The risk of slipping makes him feel insecure, causing discomfort and distrust when trying to access the mall, leading him to be discouraged from visiting. This type of hazard on the sidewalks is the responsibility of the municipality of Cidra, who must ensure that the surfaces are safe and suitable for all individuals, especially those with reduced mobility.

44.1.3.    Unevenness and Cracks: Mr. Carlos Molina knows that the sidewalk has unevenness and cracks along its length. These imperfections greatly hinder the use of a wheelchair, making his movement unstable and dangerous. The discomfort caused by navigating these potholes and cracks discourages him from visiting the mall, as his path is constantly interrupted. It is the responsibility of the municipality of Cidra to repair these cracks and potholes on the sidewalks, ensuring that people with reduced mobility can travel safely.

44.2.    Damaged Ramp: Mr. Carlos Molina is aware that the ramp at the entrance of the parking lot is cracked, uneven, and lacks the proper slope. Since he must use a wheelchair due to his muscular dystrophy, this barrier complicates his access to the mall. The damaged ramp prevents him from going up or down easily, forcing him to depend on the help of others or search for alternative routes, which are not always available, limiting his independence and comfort when entering the mall. The municipality of Cidra is responsible for ensuring that ramps and other access points for people with reduced mobility are in optimal condition and do not present any obstacles.

44.3.    Lack of Access Aisles in the Parking Lot: Mr. Carlos Molina is aware that the parking spaces at Villa del Carmen Mall do not have proper access aisles, as required by the ADA law. The access aisle is the striped area next to an accessible parking space. This aisle is useful for people getting in or out of their vehicles and for those transferring to or from their mobility devices. The lack of accessible aisles prevents him from easily accessing the mall from the parking lot, limiting his independence and autonomy. Due to this barrier, Mr. Molina is discouraged from visiting the mall, as the lack of accessibility makes access more complicated and impractical for him.

44.4.    To improve accessibility at Villa del Carmen Mall and eliminate the barriers faced by Mr. Carlos Molina, several solutions could be implemented. First, signs and poles that obstruct the sidewalk should be removed, creating an obstacle-free space with enough width for wheelchair circulation. Regarding the slippery surface, non-slip material or proper pavement could be installed to ensure greater

safety. Additionally, the cracks and potholes on the sidewalk must be repaired immediately to ensure the surface is smooth and level. The access ramp in the parking lot should be restored, leveled, and adjusted with the proper slope according to ADA regulations, allowing for easier and safer access. Finally, access aisles in the parking lot should be created following ADA guidelines to ensure that accessible parking spaces have clear and safe routes, allowing Mr. Molina to move with complete autonomy. These actions would not only improve accessibility but also promote the inclusion of people with mobility impairments, enabling them to enjoy the facilities without difficulties.

44.5.   The responsibility of the municipality of Cidra regarding accessibility is crucial to ensure that all people, including those with disabilities, can access public spaces safely and independently. According to the Americans with Disabilities Act (ADA) and local legislation, the municipality must ensure that urban infrastructure, such as sidewalks, ramps, and parking spaces, are accessible to people with mobility impairments, like Mr. Carlos Molina. This involves removing obstacles on sidewalks, leveling surfaces, ensuring ramps have the proper slope, and creating access aisles in parking spaces. Additionally, the municipality is obligated to conduct regular inspections to identify and correct architectural barriers, promoting the inclusion of all citizens and ensuring compliance with regulations that support equal rights and universal accessibility.

44.6.   Once these barriers are resolved, Mr. Carlos Molina will finally be able to visit the Villa del Carmen Mall, a place that has been on his mind due to the various options it offers. In addition to being a small yet charming site, the mall provides

services that could be very useful to him, such as a place to enjoy a peaceful coffee, have a delicious meal, or quickly access necessary products and services. The mall also has a practical focus, with a variety of options that make it appealing to those looking for immediate solutions. Once the obstacles are removed, Mr. Carlos will be able to access everything the mall has to offer without the concern of facing physical barriers.

45.    Mr. Carlos is interested in visiting Villa del Carmen Mall, as he considers it a good option to access various services and businesses. However, he faces architectural barriers within the mall's stores that hinder his mobility and access to the establishments. These barriers limit his ability to enjoy what the mall has to offer, preventing Mr. Carlos from visiting the businesses comfortably and independently.

45.1.    Misangeles Corp. - Carvel is known for offering the best ice creams and cakes, making it a must-visit place for anyone who enjoys desserts. The wide variety of delicious flavors, the creamy texture of their ice creams, and the freshly baked cakes make it a place that Mr. Carlos eagerly looks forward to visiting in the near future, specifically within the next month. He is particularly drawn to their exclusive creations and the opportunity to enjoy a sweet treat in a cozy and pleasant environment. The combination of high-quality products and such a welcoming atmosphere is what makes Carvel stand out, making Mr. Carlos eager to go. However, despite his strong desire to go, Mr. Carlos has been discouraged from visiting the place due to the architectural barriers present, which make it difficult for him to move around and access the store comfortably in his wheelchair.

45.1.1.    Insufficient Restroom Space: Mr. Carlos Molina is aware that the bathroom in Carvel is very narrow and does not offer enough space next to the toilet for maneuvering. Due to his muscular dystrophy and the use of a wheelchair, this lack of space prevents him from moving comfortably and safely within the bathroom. The tight space forces him to make complicated and sometimes dangerous movements, causing discomfort and frustration. Since he cannot use the bathroom autonomously, Mr. Carlos is discouraged from visiting the place, as the lack of accessibility takes away his independence and ability to fully enjoy the location.

45.1.2.    Difficulties with the Carpet at the Entrance: Mr. Carlos Molina knows that the entrance to Carvel has a carpet that prevents his wheelchair from gliding easily. This carpet becomes a significant obstacle for him, as the material it is made of is not suitable for the smooth movement of a wheelchair. The carpet hinders movement, making his progress slower and more complicated. The effort required to navigate it increases the time and energy it takes for him to enter the establishment. This physical barrier causes insecurity and frustration, as he cannot access the place with the agility he needs. Due to this inconvenience, Mr. Carlos is discouraged from visiting Carvel, as access is not as easy or independent as he requires.

45.1.3.    Inaccessible Counters: In Carvel, the transaction and service counters do not have the proper depth to allow Mr. Carlos to get close enough with his wheelchair. This presents a significant limitation for him, as he cannot

interact adequately with the employees or make his purchases comfortably. The lack of accessibility at the counters prevents him from getting close enough, making it difficult for him to receive personalized attention and shop with ease. Mr. Carlos feels excluded by this lack of adaptations, which causes frustration and discourages him from visiting the establishment.

45.1.4.  Obstruction in the Tables: Mr. Carlos Molina is aware that the tables at Carvel have bases that prevent him from approaching them frontally with his wheelchair. This restrictive design forces him to find an uncomfortable way to sit, making it difficult for him to enjoy his meal in a relaxed and comfortable manner. The bases of the tables do not allow him to approach properly, preventing him from enjoying his time at the establishment like any other customer. Due to this barrier, Mr. Carlos is discouraged from going to Carvel, as he will not be able to access the tables independently, limiting his ability to enjoy the service and preventing him from feeling completely comfortable.

45.1.5.  To improve accessibility for Mr. Carlos Molina, several changes should be implemented at Carvel. First, the restroom should be renovated to provide enough space next to the toilet, allowing for safe and comfortable wheelchair maneuvering. This would ensure that Mr. Carlos can use the restroom independently, without the need for complicated or dangerous movements. The carpet at the entrance should be replaced with a smooth, wheelchair-friendly surface, making access effortless and ensuring that

Mr. Carlos can enter the establishment without difficulty. The counters should be redesigned to have the necessary depth, allowing Mr. Carlos to approach easily, enabling him to interact comfortably and make purchases or receive service in an accessible manner. Lastly, the tables should be modified to remove obstructive bases, providing clear front access for Mr. Carlos's wheelchair. This would allow him to sit comfortably and enjoy his meal without limitations. These adjustments would significantly improve Mr. Carlos's experience, allowing him to fully enjoy the establishment.

45.2.    For Mr. Carlos Molina, the Panera MS Corp. - Ííbaro restaurant is a true gem in the heart of Cidra, known for offering delicious Puerto Rican Creole food that captures the essence and flavors of the island. Its excellent location, surrounded by the warmth of the town, makes it a special place to enjoy typical local dishes. Mr. Carlos Molina is particularly interested in visiting Ííbaro to try their famous breakfasts, especially the Jíbaro sandwich, which he has heard is an exquisite combination of native flavors. However, despite his desire to visit the restaurant since December 2024, he has been discouraged from doing so due to the architectural barriers he knows exist at the location. He plans to go to the restaurant in September but fears feeling unequal and even discriminated against because of the following barriers:

45.2.1.    Restroom Access: Mr. Carlos Molina is aware of the barrier posed by the restroom access in Iíbaro. The restroom door is too narrow for him to pass through with his wheelchair, preventing him from entering. Additionally,

there is not enough space beside the toilet to maneuver or move the wheelchair inside the restroom. Due to his muscular dystrophy, his mobility is limited, and he is affected by the lack of space, making it difficult for him to use the restroom comfortably or properly. This limitation causes him constant difficulties and makes him feel uncomfortable, leading him to feel discouraged from visiting the place because of this barrier.

45.2.2.    Overly High Service Counters: Mr. Carlos Molina is aware of the barrier related to the height of the service counters in Iíbaro. These counters are too high, preventing him from interacting with them properly while seated in his wheelchair. Being in a sitting position, he cannot reach the area designed for tasks such as paying or asking for information without stretching, which causes him pain due to his muscular dystrophy. The lack of accessibility at the counters affects his ability to interact independently with the staff and services. This generates a sense of exclusion and frustration, making him feel discouraged from visiting the place.

45.2.3.    Lack of Depth in Service Counters: Mr. Carlos Molina is aware of the barrier related to the lack of depth in the service counters in Iíbaro. These counters do not allow Mr. Molina to get close enough for a proper frontal access. As a wheelchair user, he needs to be close to interact efficiently, but the lack of depth prevents him from getting close enough. His health conditions, such as muscular dystrophy, affect his ability to move and approach the counters, limiting his independence and forcing him to seek

help. Due to this barrier, Mr. Carlos Molina feels discouraged from visiting the place.

45.2.4.    Inaccessible Tables: Mr. Carlos Molina is aware of the barrier represented by the tables in the commerce in Iíbaro. The tables located in the center of the place have a base that blocks frontal access, and those near the window are too high for him. Due to his wheelchair, he cannot get close enough to the tables and cannot enjoy the space comfortably, requiring him to perform dangerous maneuvers just to have enough space to eat. The lack of accessibility prevents him from interacting with the environment autonomously, affecting his mobility and comfort. This creates discomfort and makes him feel discouraged from visiting the place.

45.2.5.    To address these barriers, the restroom should be redesigned to ensure it is wheelchair accessible. The door should be wide enough to allow easy passage of a wheelchair, and there must be enough space beside the toilet to maneuver and position the chair comfortably. Moreover, service counters should be lowered to a maximum height of 36 inches to ensure that Mr. Carlos Molina, can interact with them without difficulty. The counters should also have adequate depth, allowing Mr. Carlos  to approach and access them properly from a frontal position. Regarding the tables, the ones in the center should have a base that does not obstruct wheelchair access, and those near the windows should be lowered to an appropriate height. If these barriers are addressed, Mr. Carlos Molina

would feel more comfortable and independent, leading him to visit the place without hesitation.

### *Responsibility of the Municipality of Cidra and Polito's Coffee Inc.- Polito's Coffee*

46. Mr. Carlos Molina Román, who relies entirely on a wheelchair due to muscular dystrophy, has been eager to visit Polito's Coffee, a cherished local eatery renowned for its authentic Puerto Rican comfort food, including standout dishes like hearty stews, mondongos, and its celebrated coffee. All served in a warm, family-oriented atmosphere praised for its affordability and welcoming vibe. The restaurant's unique appeal lies in its ability to blend traditional recipes with a small-town charm, where customers feel like they are dining with relatives—a quality Mr. Molina, who values cultural authenticity and community connection, cannot find elsewhere. Given the café's proximity to places he frequents, Mr. Molina Román has a strong desire to experience its offerings firsthand during April 2025 to enjoy their dishes and celebrate special occasions with family. However, since December 2024, he has been aware of several architectural barriers that impede his ability to access the establishment safely and independently. These obstacles have discouraged him from visiting on april, as he anticipates that he would not be able to enjoy the café on equal terms with other customers. The barriers preventing his access include:

    46.1. Lack of Accessible Ramps. Mr. Molina Román has noted that the corner where the entrance to the establishment is located lacks an accessible ramp, and instead, there is a rainwater drainage grate in its place. Without a proper curb cut, he is unable to transition smoothly from the street to the sidewalk, preventing him from independently reaching the café's entrance. The absence of a ramp forces him to

search for an alternative route, which adds unnecessary distance and effort to his journey.

46.1.1.    Moreover, Mr. Molina Román has observed that none of the four curbs at this intersection have a curb ramp, making it impossible for him to transition from the street to the sidewalk or move from one sidewalk to another. Without these necessary accommodations, he remains completely blocked from reaching the café, as he cannot climb any of the curbs or safely navigate around the area.

46.1.2.    These curbs are part of a public infrastructure and fall under the responsibility of the Municipality of Cidra. By failing to install proper curb ramps at these intersections, the local government has neglected a fundamental accessibility feature that Mr. Molina Román, as a wheelchair user, relies on to navigate his surroundings safely. The lack of curb ramps not only obstructs his ability to access Polito's Coffee but also limits his overall mobility in the area, preventing him from moving freely and independently like other members of the community.

46.2.    Inaccessible and Obstructed Sidewalks. Mr. Molina Román is aware that the only accessible ramp to get to Polito's Coffee is further away on the sidewalk to the left. However, even if he attempted to use that ramp, the left sidewalk leading to the café is too narrow and obstructed by utility poles, making it impossible for him to pass through in his wheelchair. Additionally, the surface is cracked, uneven, and covered with poorly executed patches, further complicating his ability to navigate safely. On the right-side sidewalk, there are no ramps at all, and

additional barriers such as severe height variations, deep cracks, and overall poor maintenance create an impassable route. The lack of space and hazardous conditions mean that Mr. Molina Román's wheelchair simply does not fit through these narrow and deteriorated pathways, leaving him with no accessible way to approach the establishment.

46.2.1.    Since these sidewalks are part of the public infrastructure, their maintenance, and accessibility fall under the responsibility of the Municipality of Cidra. By allowing them to remain in such poor condition and neglecting to ensure that public walkways are properly maintained and free of obstructions, the municipality has failed to provide an accessible route for individuals with disabilities and has directly impacted Mr. Molina Román's ability to access businesses and public spaces safely.

46.3.    Step at the Entrance. Even if Mr. Molina Román were able to navigate the obstructed sidewalks, he has noted that the entrance to Polito's Coffee has a step before reaching the door. This single step acts as an absolute barrier, making it impossible for him to access the establishment. Since he cannot lift his wheelchair over the step, he is entirely unable to enter the café. The absence of a ramp at the entrance denies him the opportunity to enjoy the establishment like other customers, effectively excluding him from its services.

46.4.    Lack of Accessible Parking. Mr. Molina Román is aware that while Polito's Coffee provides parking across the street, there are no visible signs marking a designated accessible parking space. Without a properly marked accessible parking spot with an adjacent access aisle, he is unable to transfer safely from his

vehicle or navigate to the entrance without significant difficulty. The absence of designated accessible parking makes it impossible for him to reach the café without encountering multiple accessibility barriers.

46.5.    Ensuring Mr. Molina Román's access to Polito's Coffee requires various accessibility improvements. The Municipality of Cidra must install ADA-compliant curb ramps at all four corners of the intersection adjacent to Polito's Coffee to eliminate the discriminatory barrier that prevents Mr. Molina Román from transitioning from the street to the sidewalk. Additionally, the Municipality must repair and widen the obstructed sidewalks to a minimum clear width of 36 inches (91 cm), remove utility poles encroaching on the path, and level uneven surfaces, as these conditions currently make the route impassable for wheelchair users. Polito's Coffee Inc. must implement readily achievable modifications to ensure access to its services, including installing a ramp at the entrance to eliminate the step barrier and designating at least one accessible parking space with a 96-inch-wide (244 cm) access aisle and vertical signage displaying the International Symbol of Accessibility, as the current lack of marked spaces discriminates against patrons with disabilities. Implementing these changes would remove the obstacles preventing Mr. Molina Román from accessing Polito's Coffee, giving him the opportunity to enjoy its offerings like any other customer and encouraging him to visit as he had planned.

### *Responsibility of the Municipality of Cidra and Pueblo Viejo, LLC Pueblo Viejo*

47.    Mr. Carlos Molina Román, who relies entirely on a wheelchair due to his muscular dystrophy, has a deep appreciation for Puerto Rican food with a "homemade flavor". In

his search for this unique culinary experience, he learned about Pueblo Viejo in December 2024 and has been eager to visit ever since. The restaurant is renowned for its exquisite Puerto Rican cuisine and warm, family-friendly atmosphere, with signature dishes like *mofongo* stuffed with garlic sauce octopus, and grilled chicken breast with mixed rice and beans, which have earned exceptional reviews from patrons. Additionally, the personalized service provided by staff members enhances the dining experience, making guests feel welcomed and valued. He plans to visit the restaurant in May 2025, during the spring season, to enjoy its celebrated dishes. However, since December 2024, Mr. Molina has been aware of several architectural barriers that prevent him from accessing the establishment. These obstacles have discouraged him from visiting, as he anticipates that navigating the space in its current state would be exhausting and frustrating. The barriers preventing his access include:

47.1.    Narrow and Uneven Sidewalk: Mr. Molina Román is aware that the sidewalk in front of Pueblo Viejo is cracked and consistently narrow, barely accommodating the width of his wheelchair. At a certain point, the sidewalk becomes extremely narrow, making passage nearly impossible for him. Due to his muscular dystrophy, which severely limits his upper body strength and mobility, he struggles to maneuver through tight spaces, often barely fitting through the narrowest sections. This barrier forces him to exert extra effort and increases the risk of tipping over, making the journey to the restaurant physically exhausting and unsafe.

47.1.1.    The sidewalk in front of Pueblo Viejo, which is part of the public infrastructure, falls under the responsibility of the Municipality of Cidra.

The cracked, narrow, and uneven condition of this sidewalk directly affects Mr. Molina Román's ability to navigate public spaces and access local businesses independently. By failing to address these issues and ensure that this public walkway is accessible, properly maintained, and free of obstructions, the municipality has neglected its duty to provide safe and accessible routes. This perpetuates the exclusion of Mr. Molina from participating fully in community life.

47.2.    Obstructed Right Corner: Mr. Molina Román has observed that at the right corner of the sidewalk leading to the restaurant, a stop sign pole is positioned across the sidewalk, obstructing the path. Additionally, the ramp at this corner is partially blocked by a utility pole. These obstructions impede his ability to navigate the sidewalk and access the ramp, further restricting his mobility.Due to his reliance on a wheelchair and his limited ability to navigate around obstacles, this barrier forces him to stop abruptly or attempt risky maneuvers, further complicating his journey to the restaurant.

47.2.1.    The public sidewalk and ramp at the right corner fall under the responsibility of the Municipality of Cidra. By allowing these obstacles to remain in place, the municipality has failed to provide a clear and safe path for Mr. Molina Román. This negligence perpetuates the exclusion of individuals with disabilities, like Mr. Molina Román, from accessing public spaces and local businesses independently and safely.

47.3.    Lack of a Proper Ramp on the Left Corner. Mr. Molina Román notes that the left corner of the sidewalk lacks an access ramp. What appears to be a ramp is

unmarked, cracked, narrow, and features a storm drain grate and a manhole cover. These conditions prevent him from safely transitioning from the street to the sidewalk, limiting his access route to the restaurant. His wheelchair cannot navigate this uneven and hazardous surface, making it impossible for him to access the restaurant without assistance.

47.3.1.  Since the sidewalk ramp is part of the public infrastructure, its maintenance falls under the responsibility of the Municipality of Cidra. By failing to address the cracked, narrow, and hazardous conditions of the existing ramp, the municipality has neglected its duty to ensure accessible routes for all. This failure forces Mr. Molina Román to rely on assistance to access the restaurant, perpetuating his exclusion from participating independently and equally in the public scene.

47.4.  Restaurant Sign Blocking the Sidewalk. Mr. Carlos Molina Román is aware that the restaurant's sign is placed across the sidewalk, obstructing his path. His reliance on a wheelchair makes it difficult to maneuver around the sign, forcing him to either stop or risk tipping over, which discourages him from attempting to visit the establishment.

47.5.  Narrow Entrance Due to French Doors. Mr. Carlo Molina Román has observed that the restaurant's entrance features French doors, with only one door typically open, resulting in a narrow entryway for his wheelchair. His muscular dystrophy, which limits his ability to adjust his position or squeeze through tight spaces, prevents him from entering the restaurant independently, forcing him to rely on others for assistance.

47.6.    Staircase at Entrance Without Alternative Access: Mr. Carlos Molina Román is aware that the entrance to Pueblo Viejo includes stairs, and there is no alternative accessible entrance equipped with a ramp. His complete reliance on a wheelchair makes it impossible for him to climb stairs, effectively barring him from entering the restaurant without significant assistance.

47.7.    High Bar Counter Obstructed by Chairs: Mr. Molina Román is aware that the bar counter inside the restaurant is high, lacks an accessible section, and is obstructed by chairs. This setup prevents him from approaching the bar to place orders, dine or interact with staff, limiting his experience within the establishment. His limited upper body strength prevents him from reaching the counter, forcing him to depend on others for assistance and undermining his independence.

47.8.    Inaccessible Payment Counter. Mr. Carlos Molina Román is aware that the payment section of the counter is also inaccessible, as it is too high and lacks adequate space for his wheelchair. His inability to reach the counter or position himself comfortably forces him to rely on others to complete transactions, creating an unequal and frustrating experience.

47.9.    Cramped Dining Layout. Mr. Carlos Molina Román is aware that the tables at Pueblo Viejo are positioned too close together, leaving insufficient space for him to maneuver his wheelchair comfortably. Due to his muscular dystrophy, which has left him entirely reliant on a wheelchair for mobility, he cannot navigate tight spaces or adjust his position easily. The lack of sufficient clearance between tables forces him to navigate awkwardly, increasing his physical strain and causing discomfort, while also making it nearly impossible to move freely or access

seating areas comfortably. This barrier directly impacts his ability to enjoy the dining experience, as the cramped layout excludes him from fully participating and creates unnecessary frustration.

47.10.  Inaccessible Tables with Central Supports. Additionally, Mr. Molina Román is aware that the tables at Pueblo Viejo have central supports with extending legs, making it impossible for him to position his wheelchair comfortably under them. Due to his muscular dystrophy, which has severely limited his ability to adjust his posture or move closer to the table, he is forced into an awkward and uncomfortable position. Without at least one accessible table, he is unable to dine independently or comfortably, further isolating him from the dining experience.

47.11.  To address these barriers, several critical modifications must be implemented. The Municipality of Cidra must repair and widen the sidewalks in front of the restaurant, ensuring they are smooth, free of cracks, and wide enough to accommodate wheelchair users safely. Additionally, the municipality must remove obstructions such as the stop sign pole and utility pole at the right corner and install properly marked and structurally sound curb ramps at both corners of the sidewalk, eliminating hazardous elements like storm drain grates and manhole covers that impede safe access. Within the restaurant, the entrance must be fully accessible by ensuring that both French doors remain open or modifying the doorway to provide sufficient clearance for wheelchair users. Moreover, a ramp must be installed as an alternative to the staircase at the entrance. Inside, the restaurant must designate at least one fully accessible table with appropriate height and clearance, reposition tables to allow proper maneuverability, and lower

a section of the bar counter and payment counter to ensure that Mr. Molina Román can interact with staff and complete transactions without assistance. Finally, the restaurant sign must be repositioned to avoid obstructing the sidewalk. Implementing these changes would provide Mr. Molina Román with an equitable and dignified dining experience, allowing and encouraging him to visit Pueblo Viejo.

### Responsibility of the Municipality of Cidra and Q'rico Brunch & Restaurant Llc-Q' Rico Brunch & Restaurant

48.  Mr. Carlos Molina Román intends to visit Q' Rico Brunch & Restaurant in June 2025, during the early summer, to treat himself to a relaxing solo meal and enjoy the restaurant's signature dishes, such as their cassava mofongo, in a peaceful setting. He has been eager to visit since learning about the restaurant in December 2024, drawn by its all-day breakfast offerings, à la carte menu, and the opportunity to enjoy meals while overlooking Cidra's public plaza. The restaurant's warm and inviting atmosphere further enhances the dining experience, making it an appealing destination.

49.  However, since December 2024, Mr. Molina Román has been deterred from visiting due to his awareness of persistent architectural barriers that prevent him from navigating the space safely and comfortably. These accessibility challenges have consistently discouraged him from attempting to dine there, as he anticipates unequal access to the amenities and services others enjoy. The barriers he is aware of include:

49.1.  Damaged and Obstructed Sidewalk. Mr. Carlos Molina Román has noted that the sidewalk in front of Q' Rico Brunch & Restaurant is in poor condition, with missing and uneven tiles that create an unstable surface. As a wheelchair user with muscular dystrophy, these irregularities make it extremely difficult for him to

navigate safely, forcing him to exert additional effort to maintain balance and increasing his risk of discomfort. Additionally, a utility pole is positioned directly in front of the establishment, obstructing the sidewalk and preventing his wheelchair from passing through. This obstruction forces him to either turn back or find an alternative, more difficult path, adding unnecessary strain to his journey. Further compounding the issue, the right-side corner of the sidewalk becomes significantly narrower, making passage even more restrictive for his wheelchair. Another utility pole at this corner further limits his ability to turn and maneuver safely. Given his limited mobility and the space required for a wheelchair to navigate comfortably, these barriers make it nearly impossible for him to reach the restaurant without assistance.

49.1.1.   Since the sidewalk in front of Q' Rico Brunch & Restaurant is part of the public infrastructure, its upkeep and accessibility fall under the responsibility of the Municipality of Cidra. By allowing it to remain in a deteriorated state with missing tiles, uneven surfaces, and obstructive utility poles, the municipality has failed to ensure a safe and accessible pedestrian route. These conditions directly impact Mr. Molina Román's ability to navigate public spaces independently, forcing him to rely on assistance or face significant difficulty reaching the restaurant. The lack of proper maintenance and clear pathways reinforces his exclusion from fully participating in the community, creating unnecessary barriers that hinder his mobility and equal access.

49.2.    Ineffective Ramp Due to Limited Maneuvering Space. Mr. Molina Román has noted that the small section of the sidewalk where the ramp at the right-side corner leads, does not provide enough space for him to turn properly with his wheelchair. As a result, the ramp becomes unusable, failing to serve its intended purpose of providing access. His reliance on a wheelchair means that without adequate space to maneuver, he cannot independently access the sidewalk from this point, leaving him without a viable entry route.

49.2.1.    Because this ramp is part of the public infrastructure, ensuring its proper functionality falls under the responsibility of the Municipality of Cidra. By failing to provide sufficient maneuvering space at the top of the ramp, the municipality has effectively rendered it inaccessible for wheelchair users like Mr. Molina Román. Without the necessary clearance to turn safely, the ramp does not fulfill its purpose, forcing him to seek alternative and more challenging routes. This oversight severely restricts his independence and reinforces the systemic barriers that prevent him from navigating public spaces equally.

49.3.    Step at the Entrance. Mr. Molina Román is aware that the entrance to Q' Rico Brunch & Restaurant includes a step, making it completely inaccessible for his wheelchair. Since he cannot lift his wheelchair over the step, this barrier physically prevents him from entering the restaurant independently. Without a ramp or accessible alternative, he is effectively excluded from the establishment.

49.4.    Push-Open Doors. Mr. Molina Román has observed that the restaurant's entrance doors require pushing to open. Given his muscular dystrophy, which significantly

weakens his upper body strength, he struggles to generate the force needed to push the doors open while simultaneously maneuvering his wheelchair. This barrier makes entering the restaurant an exhausting and frustrating experience.

49.5.    Advertising Sign Blocking the Sidewalk: Mr. Molina Román is aware that the restaurant places an advertising sign on the sidewalk, further obstructing his already limited pathway. His wheelchair requires clear, unobstructed space to pass safely, and this additional obstacle forces him to either reroute or attempt to navigate around it with great difficulty. His limited upper body mobility makes sudden adjustments particularly challenging, increasing his discomfort and frustration.

49.6.    Inaccessible and Obstructed Service Counter: Mr. Molina Román has noted that the restaurant's service counter is extremely high and obstructed by chairs. Due to his limited upper body strength, he cannot comfortably reach the counter to place an order or interact with staff. The obstruction by chairs further complicates his ability to approach the counter, leaving him unable to engage with the restaurant's services independently.

49.7.    Cramped and Inaccessible Dining Area: Mr. Carlos Molina Román is aware that the dining area at Q' Rico Brunch & Restaurant is overcrowded with tables placed too closely together, preventing his wheelchair from passing without colliding with furniture. Due to his muscular dystrophy, which has left him entirely reliant on a wheelchair for mobility, he cannot maneuver through tight spaces or adjust his position easily. The lack of sufficient clearance between tables forces him to

navigate awkwardly, increasing his physical strain and making it nearly impossible to move freely or access seating areas comfortably.

49.8.    Inaccessible tables: Additionally, Mr. Carlos Molina Román is aware that the tables at Pueblo Viejo have a central support with extending legs, making it impossible for him to position his wheelchair comfortably under them. Due to his muscular dystrophy, which has left him entirely reliant on a wheelchair for mobility, he cannot adjust his posture or move closer to the table without significant strain. Without at least one accessible table, he is unable to dine comfortably or independently, as the current design forces him into an awkward and uncomfortable position.

49.9.    To address these barriers, several modifications must be made. The sidewalk in front of the restaurant should be repaired by replacing missing and uneven tiles to create a smooth and stable surface. The utility poles obstructing the sidewalk and right-side corner should be relocated to allow enough clearance for wheelchair users. Additionally, the sidewalk ramp at the right corner must be redesigned to provide adequate space for maneuvering. A properly constructed ramp at the entrance would eliminate the step barrier, allowing Mr. Molina Román to enter the establishment without assistance. The push-open doors should be replaced with an automatic or more accessible door system to accommodate individuals with limited upper body strength. The restaurant's advertising sign must be repositioned to ensure the sidewalk remains clear for passage. The service counter should include a lowered accessible section, free from obstructions, so that Mr. Molina Román can comfortably place orders and interact with staff. Inside the

dining area, at least one accessible table should be provided, with adequate spacing between tables to allow easy wheelchair navigation. Implementing these changes would remove the barriers preventing Mr. Molina Román from enjoying the restaurant, making him feel welcomed and encouraged to visit.

### *Responsibility of the Municipality of Cidra and Restaurant De La Pagoda China Corp. Restaurant De La Pagoda China*

50.  Mr. Carlos Molina is interested in visiting Restaurant De La Pagoda China because he knows that its flavor is unique and different from other restaurants, and he is eager to try the mofongo, as he knows it is the only place where it is prepared in a special way. He also values the excellent customer service, the variety of food and drinks, as well as the selection of different ice cream flavors offered by the establishment. Mr. Molina has plans to visit the restaurant in four months to finally try the mofongo and other affordable and delicious dishes that the establishment offers.

51.  However, since January 2025, he has been aware of the architectural barriers at the restaurant, which has continuously discouraged him from visiting. Although he wanted to go in February and March 2025, he ultimately decided against it because he knows these barriers would directly impact his ability to access the restaurant comfortably and safely. Due to his muscular dystrophy and reliance on a wheelchair, Mr. Molina feels profoundly discouraged from visiting, as doing so would expose him to a discriminatory experience where he would not be able to move freely or access the restaurant's services on equal terms. The presence of these barriers creates an environment that is neither welcoming nor accessible to him, reinforcing his perception that the restaurant is not designed to accommodate individuals with disabilities. This exclusionary reality has forced him to

postpone his visit, despite his strong desire to enjoy the restaurant's food and ambiance. Mr. Molina is aware of the following barriers at Restaurant De La Pagoda China:

51.1.    Lack of Accessibility at Restaurant De La Pagoda China and Municipal Negligence: Mr. Carlos Molina is aware that Restaurant De La Pagoda China has an uneven parking lot with potholes and cracks, making wheelchair mobility extremely difficult. The lack of designated accessible parking spaces further complicates his ability to transfer safely from his vehicle, increasing physical strain and discomfort. Additionally, the sidewalk in front of the restaurant is too narrow, and the parking lot illegally encroaches on pedestrian space, forcing him to navigate unsafe conditions or move onto the street, exposing himself to traffic. Despite being aware of these accessibility issues, the Municipality of Cidra has failed to take corrective action, neglecting its responsibility to maintain proper sidewalks and enforce accessibility standards. This ongoing inaction perpetuates discrimination, restricting Mr. Molina's right to move freely and safely in public spaces.

51.1.1.    The parking lot at Restaurant De La Pagoda China must be resurfaced to eliminate potholes and cracks, which currently make wheelchair mobility extremely difficult. The uneven surface causes Mr. Carlos Molina's wheelchair to jolt abruptly, generating pain in his back and shoulders and increasing muscle tension in his arms and torso. Additionally, the lack of designated accessible parking spaces with proper signage forces him to park in inadequate areas, making transfers from his vehicle complicated and unsafe. Without an appropriate space to maneuver, he experiences

increased physical strain and discomfort, limiting his ability to access the restaurant independently.

51.1.2.   The sidewalk in front of Restaurant De La Pagoda China is too narrow, and the parking lot has been illegally positioned, encroaching on pedestrian space, further restricting Mr. Molina's ability to navigate safely. As a wheelchair user, he is forced to attempt to maneuver through a reduced area that does not allow him to move freely, increasing tension in his arms and back. Additionally, since the pedestrian space is occupied, he is left with no option but to use the street, exposing himself to moving vehicles, which causes anxiety and further complicates his mobility. Despite being aware of this issue, the Municipality of Cidra has failed to take corrective action, allowing the parking lot to continue violating pedestrian space and neglecting its responsibility to maintain accessible sidewalks. By ignoring these barriers, the municipality perpetuates discrimination, restricting Mr. Molina's ability to move freely and safely in public spaces.

51.2.   Parking Lot with Uneven Surface: Mr. Carlos Molina is aware that the parking lot at the restaurant has an uneven surface with potholes and cracks, which significantly affects his ability to move safely in his wheelchair. Due to his muscular dystrophy, navigating over unstable or uneven surfaces requires excessive effort, increasing physical strain. The abrupt jolts caused by potholes and cracks result in impact-related pain in his back and shoulders, while the

constant vibrations intensify muscle tension in his arms and torso, accelerating fatigue and making mobility increasingly difficult.

51.3.   Lack of Accessible Parking Spaces: Mr. Molina is also aware that the restaurant's parking lot lacks designated accessible parking spaces with proper signage for individuals with disabilities. As a wheelchair user, he requires a reserved space with adequate dimensions and a clear access aisle to safely exit his vehicle. The absence of these spaces forces him to park in unsuitable areas where he cannot properly maneuver his wheelchair, making transfers from his vehicle difficult and uncomfortable. This situation places additional strain on his torso and arm muscles, increasing his fatigue and heightening the risk of falls when attempting to enter or exit his car without an accessible space that facilitates the process.

51.4.   Excessive Counter Height: Mr. Molina is aware that the restaurant's customer service and transaction counter is too high, preventing him from interacting with staff effectively. Due to his muscular dystrophy, he has difficulty lifting his arms for prolonged periods without experiencing pain and fatigue in his neck and shoulder muscles. As a result, he is unable to place orders or make payments independently, forcing him to rely on assistance from others for basic transactions, which negatively impacts his experience as a customer.

51.5.   Lack of Adequate Counter Depth: Additionally, the service counter lacks sufficient depth to allow for a proper frontal approach. As a wheelchair user, Mr. Molina is unable to position himself close enough to comfortably reach the counter, forcing him to stretch forward in an uncomfortable and physically demanding manner. His limited muscle strength makes it difficult for him to reach

forward easily, and the need for repetitive movements further exacerbates his fatigue, making simple interactions with staff unnecessarily difficult.

51.6.    Lack of Signage for an Accessible Restroom: Mr. Molina is aware that the restaurant does not have signage indicating the location of an accessible restroom. Given his muscular dystrophy, he needs to plan his movements within the establishment to conserve energy and avoid unnecessary exertion. The absence of clear signage forces him to search the facility without knowing whether an accessible restroom is available, leading to anxiety and increased fatigue. If no accessible restroom is available, he is left with no option but to delay his physiological needs, which can result in physical discomfort, bladder pressure, and, in prolonged cases, potential urinary and digestive health issues.

51.7.    To ensure full accessibility at Restaurant De La Pagoda China and compliance with the ADA, the parking lot must be resurfaced to eliminate potholes and cracks, creating a smooth and stable surface for wheelchair mobility. Designated accessible parking spaces with proper signage must be installed to provide safe and adequate areas for individuals with disabilities to park and transfer from their vehicles without physical strain. The sidewalk in front of the restaurant must be widened to meet accessibility standards, and the parking lot encroachment on pedestrian space must be corrected to restore a safe, unobstructed path of travel. The customer service counter must be lowered to an accessible height, allowing individuals in wheelchairs to interact with staff comfortably, and it must also be modified to include sufficient depth for proper frontal approach, preventing unnecessary strain when reaching forward. Clear and visible signage must be

installed inside the restaurant to indicate the location of an accessible restroom, ensuring that individuals with mobility impairments can plan their movements efficiently and access necessary facilities without difficulty. These modifications are essential to remove existing barriers, provide equal access, and ensure a safe and inclusive environment for all individuals, including Mr. Carlos Molina.

### *Responsibility of the Municipality of Cidra and Madi Services LLC*
### *Saboreo Deli & Lunch*

52.    Mr. Carlos Molina enjoys discovering places with great food and a pleasant atmosphere, which is why he wants to visit Saboreo Deli & Lunch. He knows that the food has an excellent taste and that the home-made fries are delicious. He is also drawn to the soft bread of the hamburgers and the positive recommendations about the place. Additionally, he appreciates that the atmosphere is cozy and provides an incredible sense of peace. However, since December 2024, he has known that this place has architectural barriers that limit his access. His reduced mobility and reliance on a wheelchair make these obstacles significant, and he feels discouraged from visiting. In January and February 2025, he intends to visit Saboreo Deli & Lunch because he is drawn to places that offer comforting, well-prepared food. He is particularly interested in the quality of the ingredients and the dedication put into each dish. Additionally, he values spaces that provide a peaceful and welcoming atmosphere, making this restaurant even more appealing to him. Even so, the architectural barriers make him feel discouraged from going.

53.    In the next three months, he plans to visit Saboreo Deli & Lunch because he is still eager to enjoy its well-reviewed food and inviting atmosphere. He appreciates the attention to detail in the preparation of each dish and the effort to create a satisfying dining

experience. However, the architectural barriers he is aware of make him hesitant to go. The barriers at Saboreo Deli & Lunch he is aware of are the following:

53.1.    Sidewalks with Cracks: Mr. Carlos Molina Román is aware that the sidewalks surrounding Saboreo Deli & Lunch have cracks that make navigation difficult. As he moves in his wheelchair, the uneven surface causes sudden jolts and instability, making his journey uncomfortable and physically demanding. The irregular pavement forces him to maneuver carefully to avoid getting stuck or experiencing unnecessary strain. Because of this, he feels discouraged from visiting the establishment.

53.1.1.    The Municipality of Cidra is responsible for maintaining the sidewalks in front of Saboreo Deli & Lunch. However, the presence of cracks and fractures along these pathways has made it difficult for Mr. Carlos Molina to move safely through the area. These uneven surfaces create a hazardous environment, increasing the risk of accidents and further limiting accessibility. The municipality's failure to repair these damages has not only restricted his mobility but has also contributed to his sense of exclusion, as he cannot reach the restaurant with the same ease as other visitors.

53.2.    Sidewalks with Overgrown Grass: Mr. Molina Román has noticed that the sidewalks around the establishment have grass growing through them, obstructing the path. This overgrowth limits the space available for his wheelchair, making it difficult for him to pass without getting entangled or having to adjust his route

constantly. The obstruction makes movement frustrating and inconvenient, which leaves him unmotivated to visit the restaurant.

 53.2.1. Overgrown grass and vegetation on the sidewalks in front of Saboreo Deli & Lunch have created significant mobility challenges for Mr. Carlos Molina. As the Municipality of Cidra is responsible for maintaining these pedestrian areas, its failure to address the issue has led to obstructed pathways that are difficult to navigate. The unchecked growth further reduces accessibility, forcing him to find alternative routes or struggle through unsafe conditions. This negligence has reinforced his sense of exclusion, as he faces more obstacles when trying to access the restaurant.

53.3. Sidewalks Blocked by Parked Vehicles: Mr. Carlos Molina Román observes that parked vehicles frequently block the sidewalks near Saboreo Deli & Lunch. As a wheelchair user, he relies on clear and unobstructed pathways, but these blockages force him to detour onto the street, putting him in an unsafe position. Given his Muscular Dystrophy, navigating uneven road surfaces increases his physical effort and fatigue, making movement more difficult and tiring. Additionally, his Oculocutaneous Albinism affects his vision, making it harder to detect small obstacles or irregularities on the street, increasing his risk of accidents. The difficulty of finding a clear route makes his visit unnecessarily complicated, discouraging him from going to the establishment.

 53.3.1. Sidewalks are meant to provide safety and accessible, yet in front of Saboreo Deli & Lunch, parked vehicles frequently block these spaces, making it difficult for Mr. Carlos Molina to get through. The Municipality

of Cidra, responsible for ensuring proper sidewalk use, has failed to prevent this obstruction, forcing him to navigate around cars in unsafe conditions. This situation not only creates unnecessary risks but also limits his access to the restaurant, reinforcing the barriers he faces.

53.4.    No Designated Parking with Proper Signage: Mr. Molina Román realizes that there is no designated parking space for individuals with disabilities, nor is there vertical signage indicating one. This lack of an assigned spot makes it challenging for him to find a suitable place to park, increasing the effort required to access the establishment. The absence of proper signage adds to his frustration, making him feel dissuaded from visiting the restaurant.

53.5.    Parking Lot Pavement with Cracks: Mr. Carlos Molina has seen that the pavement in the parking lot has cracks that interfere with his wheelchair's movement. These surface irregularities create instability, making it difficult for him to maintain balance and control. Due to his Muscular Dystrophy, his muscle weakness makes it harder for him to push himself forward smoothly, requiring excessive effort. The vibrations caused by rolling over the cracks lead to discomfort and fatigue, further straining his ability to move independently. The constant struggle with the rough pavement discourages him from going to the establishment.

53.6.    No Accessible Route from Parking to the Establishment: Mr. Carlos notices that there is no designated accessible route from the parking area to the entrance. Without a clear and level path, he faces unnecessary obstacles that make moving toward the restaurant challenging. His Muscular Dystrophy limits his strength, making it physically exhausting to navigate over uneven surfaces or grass.

Additionally, his Oculocutaneous Albinism affects his depth perception, making it harder to judge uneven terrain, increasing his risk of misjudging a surface and getting stuck. The lack of a direct and accessible way forces him to take alternative routes that are often unsafe or impractical, making him feel unmotivated to visit the restaurant.

53.7.    Table Arrangement Restricts Movement: Mr. Carlos finds that the way the tables are arranged inside the establishment makes circulation difficult. The tight spacing forces him to maneuver carefully or seek alternate paths, requiring precise control of his wheelchair, which is physically demanding due to his Muscular Dystrophy. The restricted space makes it difficult for him to move freely without bumping into obstacles, increasing frustration and fatigue. Additionally, his Oculocutaneous Albinism affects his ability to perceive distances clearly in dim lighting, making it harder to avoid obstructions. The restricted space makes his experience frustrating, discouraging him from visiting the restaurant.

53.8.    Tables with Bottom Support That Limits Accessibility: Mr. Carlos has noticed that the tables at Saboreo Deli & Lunch have black bottom supports that interfere with his ability to position his wheelchair comfortably. These structures prevent him from sitting close to the table, forcing him into an awkward posture or leaving him at a distance. His Muscular Dystrophy makes it difficult for him to maintain an extended arm position for prolonged periods, causing discomfort and fatigue. This limitation makes dining uncomfortable, which discourages him from visiting the establishment.

53.9.    The barriers at Saboreo Deli & Lunch could be eliminated by repairing the cracks on the sidewalks to provide a smooth and stable surface for safe wheelchair movement. The overgrown grass on the sidewalks should be trimmed regularly to prevent obstructions. Parked vehicles blocking the sidewalks must be prevented by enforcing clear no-parking zones along pedestrian pathways. A designated parking space for individuals with disabilities should be established and marked with vertical signage displaying the universal disability symbol for easy identification. The cracked pavement in the parking lot needs to be resurfaced to allow for a stable and even surface. An accessible route from the parking area to the entrance must be created to ensure a safe and direct path. Inside the establishment, the table arrangement should be adjusted to provide ample space for smooth wheelchair navigation. Lastly, tables with bottom supports that limit accessibility should be replaced or modified to allow comfortable seating. Implementing these measures would remove the existing barriers and improve access to the restaurant.

### *Responsibility of the Municipality of Cidra and Grupo Rivera Rivera LLC Supermercado Rivera*

54.    Mr. Carlos Molina is interested in Supermercado Rivera, as it is a convenient option near one of the places he frequents and allows him to access a wide variety of products in one location. The selection of fresh food, essential items, and other everyday products catches his attention, as it represents a practical alternative for shopping without long trips. Since December 2024, Mr. Carlos has been aware that the interior of the establishment may present architectural barriers that hinder his access and mobility. During January and February 2025, he wanted to visit the supermarket, but due to these barriers, he has not

done so. The presence of infrastructure irregularities compromises his comfort and autonomy while moving through the place, discouraging him from visiting.

55. Mr. Carlos has the intention to visit Supermercado Rivera in the next three months to purchase his groceries, but he feels dissuaded by the persistent accessibility barriers that affect his mobility and safety. The lack of adequate conditions for his movement within the establishment represents a significant obstacle that forces him to reconsider his visit. The barriers that Mr. Molina is aware of are:

55.1. Extremely Narrow or Nonexistent Sidewalk: Mr. Carlos Molina is aware that the sidewalk in front of Supermercado Rivera is extremely narrow and, in some sections, nearly nonexistent, making it completely difficult for him to move safely and independently. The lack of an adequate pedestrian space prevents him from traveling without interruptions, forcing him to maneuver in unsafe conditions or even use the roadway, exposing him to additional risks. The absence of a sidewalk with the minimum required width affects his experience, as it compromises his stability, safety, and ability to move continuously. The lack of an accessible and safe path not only limits his access to the area but also discourages him from visiting the establishment, as his journey to the entrance is not guaranteed to be comfortable or obstacle-free. This persistent obstacle presents a constant and avoidable challenge to his mobility—one that the municipality acknowledges but has yet to resolve—reinforcing his sense of exclusion and making it difficult for him to consider returning.

55.2. Sidewalk in Poor Condition with Surface Irregularities: Mr. Carlos Molina is aware that the sidewalk in front of Supermercado Rivera is in poor condition, with

deep cracks, potholes, and surface irregularities, making his mobility and stability difficult. These conditions prevent him from moving smoothly, as any uneven surface can cause his wheelchair to get stuck or lead to abrupt movements that compromise his control and safety. The lack of maintenance and necessary repairs affects his experience, as it forces him to make additional effort to maneuver and exposes him to unnecessary risks along his route. The deteriorated condition of the sidewalk not only hinders his safe and smooth access to the establishment but also discourages him from visiting. Although the municipality is aware of this issue, it has taken no action to resolve it, leaving the problem unaddressed and affecting Mr. Carlos's mobility.

55.3.    Obstructed Sidewalk Due to Illegal Parking: Mr. Carlos Molina is aware that illegally parked vehicles on the sidewalk in front of Supermercado Rivera block his passage, preventing him from moving freely and forcing him to seek alternative routes that may be longer or more dangerous. The improper occupation of the pedestrian space restricts his mobility and prevents him from traveling independently, subjecting him to uncomfortable maneuvers and traffic hazards. The lack of enforcement against illegal parking affects his experience, as it creates constant obstacles along his route and limits his ability to move without interruptions. The frequent obstruction of his path by parked vehicles makes it difficult for him to reach the establishment and discourages him from visiting, as his right to move safely and without barriers is not ensured. Despite the municipality's awareness of this issue, it has failed to take action, continuing to impact Mr. Carlos's mobility.

55.4.   Lack of an Accessible Ramp on the Sidewalk: Mr. Carlos Molina is aware that the sidewalk in front of Supermercado Rivera lacks an accessible ramp, preventing him from moving continuously and without barriers. The absence of a properly sloped ramp forces him to rely on external assistance or seek alternative routes that may pose greater risks or require additional effort. The lack of accessibility on the sidewalk affects his experience, as it compromises his autonomy and ability to reach the establishment without difficulty. The lack of adapted infrastructure for his mobility not only compromises his safety but also restricts his autonomy, discouraging him from visiting the establishment due to the persistent risk and the municipality's failure to address the issue.

55.5.   No Accessible Route to the Main Entrance: Mr. Carlos Molina is aware that there is no accessible route leading to the main entrance of Supermercado Rivera, which significantly limits his ability to reach the establishment independently and safely. The absence of a continuous, step-free path forces him to navigate through uneven terrain or areas that are not designed for wheelchair mobility, increasing the effort required and exposing him to potential risks. The lack of an accessible route affects his experience, as it prevents him from approaching the entrance without encountering obstacles or difficulties. The absence of a properly adapted path makes him feel dissuaded from visiting the establishment, as his mobility needs are not accommodated from the moment he arrives.

55.6.   Main Entrance Without an Accessible Ramp: Mr. Carlos Molina is aware that the main entrance of Supermercado Rivera lacks an accessible ramp, making it impossible for him to enter the establishment independently. The absence of a

properly inclined and well-designed ramp forces him to depend on external assistance or seek alternative entry points that may not be safe or convenient. The lack of an accessible entrance affects his experience, as it prevents him from entering the store comfortably and without barriers. The failure to provide an entryway that accommodates wheelchair users makes him feel dissuaded from visiting the establishment, as his ability to access the business safely and autonomously is not guaranteed.

55.7.  Narrow Entrance Due to Obstacles: Mr. Carlos Molina is aware that the entrance to Supermercado Rivera is too narrow due to obstacles placed near the doorway, making his access difficult and unsafe. The presence of objects such as signs, trash bins, or improperly placed furniture reduces the available space for him to maneuver, requiring extra effort to enter. These obstacles compromise his stability and control, making the entrance challenging to navigate. The obstruction at the entrance affects his experience, as it forces him to perform unnecessary adjustments just to access the establishment. The lack of a clear and unobstructed entryway makes him feel dissuaded from visiting the establishment, as his right to move freely and safely is not ensured.

55.8.  Small Aisles Inside the Establishment: Mr. Carlos Molina is aware that the aisles inside Supermercado Rivera are too narrow, which limits his ability to move comfortably and safely within the establishment. The lack of adequate space between shelves and transit areas prevents him from maneuvering freely, forcing him to make constant adjustments in his direction to avoid collisions or getting stuck in tight spaces. The aisle design affects his experience, as it makes it

difficult for him to move without interruptions and requires additional effort to complete his shopping. The lack of a spacious and accessible circulation area makes him feel dissuaded from visiting the establishment, as his mobility is not guaranteed in a comfortable and efficient manner.

55.9.    Product Organization Inaccessible Due to Height: Mr. Carlos Molina is aware that the organization of products inside Supermercado Rivera is not accessible, as many items are placed on shelves that are too high and out of his reach. The lack of adapted shelving or alternatives to independently access products forces him to rely on external assistance to complete his shopping, limiting his independence within the establishment. The inaccessibility of product placement affects his experience, as it compromises his ability to choose and retrieve the items he needs without depending on others. The absence of an accessible product arrangement makes him feel dissuaded from visiting the establishment, as he cannot navigate his shopping experience independently.

55.10.    Placement of Elements That Obstruct Circulation: Mr. Carlos Molina is aware that the presence of improperly placed elements inside Supermercado Rivera obstructs circulation and hinders his mobility, creating an inaccessible environment. The placement of boxes, merchandise carts, signage, or furniture in the aisles blocks his passage, forcing him to stop constantly or perform complex maneuvers to continue his path through the supermarket. The obstruction in circulation areas affects his experience, as it disrupts his smooth movement and imposes additional obstacles in completing his shopping. The lack of a clear and barrier-free space

makes him feel dissuaded from visiting the establishment, as his ability to move freely and without unnecessary effort is not ensured.

55.11.  High Customer Service Counters: Mr. Carlos Molina is aware that the customer service counters inside Supermercado Rivera are too high, making it difficult for him to interact with staff and access the establishment's products and services. The elevated height prevents him from making payments, receiving information, or completing transactions independently, forcing him to rely on external assistance for basic actions. The lack of adapted counters affects his experience, as it limits his ability to navigate the supermarket independently. The need to request help for essential activities makes him feel dissuaded from visiting the establishment, as he cannot access customer service comfortably and without barriers.

55.12.  To ensure safe and comfortable access for Mr. Carlos Molina, Supermercado Rivera can implement various solutions to eliminate the architectural barriers present both in the surrounding area and inside the establishment. One of the key improvements is the expansion and construction of an accessible sidewalk, ensuring that it meets the minimum required width and extends across the entire pedestrian zone. A continuous and properly maintained sidewalk would prevent him from having to travel on the roadway, significantly reducing risks and allowing him to move more independently. Additionally, it is essential to repair the sidewalk, eliminating cracks, potholes, and uneven surfaces that hinder his mobility. A smooth and well-maintained pavement would prevent his wheelchair from getting stuck or experiencing abrupt movements that compromise his

stability. A properly sloped accessible ramp should also be installed on the sidewalk, ensuring a smooth and barrier-free entry from the moment he arrives at the supermarket. To prevent obstructions, measures should be taken to enforce regulations against illegal vehicle parking on the sidewalk, such as installing bollards or clear signage prohibiting this practice. Furthermore, it is crucial that the relevant authorities reinforce supervision and impose penalties on those who unlawfully occupy pedestrian spaces, ensuring a clear and safe path for individuals with reduced mobility. At the entrance of the establishment, an accessible route must be provided, allowing him to reach the main door without obstacles. This includes removing steps, uneven surfaces, or irregular flooring and replacing them with a continuous, wheelchair-friendly pathway. Additionally, the installation of an accessible ramp at the main entrance is required, ensuring it is properly designed for independent entry without external assistance. Any obstacles near the entrance, such as misplaced furniture, trash bins, or signage that reduce entry space, should also be relocated or removed. Inside the store, aisles should be widened to improve circulation, ensuring enough space for Mr. Carlos Molina to move without interruptions. This can be achieved by reorganizing shelves and furniture to create wider and more accessible pathways. It is also essential to rearrange products so they are within reach, ensuring that items are placed at an accessible height for all customers, preventing him from having to rely on assistance to complete his shopping. Another crucial aspect is removing elements that obstruct circulation inside the supermarket, such as boxes, merchandise carts, or improperly placed signage in the aisles. Keeping these areas

clear would ensure that he can move freely without additional maneuvers or interruptions. Finally, it is recommended to adjust the height of customer service counters, installing an accessible section that allows him to comfortably interact with staff, make payments, and receive information without needing external assistance. This ensures that he completes his transactions independently and without barriers. As these barriers are removed, Mr. Carlos Molina no longer feels dissuaded from visiting Supermercado Rivera. An accessible and safe environment allows him to move without difficulties, access products and services independently, and interact with staff without limitations. These improvements reflect a genuine commitment to inclusion and ensure that his experience at the supermarket is fully accessible.

### *Responsibility of the Municipality of Cidra and 804 Coffee Bar LLC* ###
### *804 Coffee Bar at Pepe Abad Kia* ###

56.    Mr. Molina has a great appreciation for coffee in all its forms. He enjoys its intense aroma, the complexity of its flavors, and the way it can be incorporated into various culinary preparations. From this perspective, 804 Coffee Bar catches his attention, as he values spaces that invite relaxation, where every detail contributes to a pleasant experience, from the selection of the beans to the atmosphere that surrounds him. Precisely because of his connection to his passion for coffee and the enjoyment of small pleasures, Mr. Molina is interested in 804 Coffee Bar at Pepe Abad Kia.

57.    However, since December 2024, Mr. Molina has been aware that the establishment presents certain architectural barriers that make access and mobility within the space difficult. During January and February 2025, he wanted to visit the Coffee Bar, but due to these barriers, he has not done so, as the conditions of the environment affect his comfort

and autonomy, discouraging him from attending. Mr. Molina has the intention to visit 804 Coffee Bar in the next three months to enjoy his hot coffee and the ambiance of the place, but he feels dissuaded from doing so due to the persistent accessibility barriers that affect his mobility and safety. The lack of adequate conditions for his movement within the establishment represents a significant obstacle that forces him to reconsider his visit. The barriers that Mr. Molina is aware of are:

57.1.    Sidewalk Without an Accessible Ramp: Mr. Carlos Molina is aware that the sidewalk in front of 804 Coffee Bar at Pepe Abad Kia lacks an accessible ramp, despite having a significant level difference. Along approximately 60 meters of sidewalk, there is not a single ramp that allows him to move continuously and without barriers, compromising his mobility and safe access to the establishment. The absence of an accessible ramp affects his experience, as it forces him to seek alternative routes that may be longer or unsafe, increasing his physical effort and dependence on external assistance. The lack of adequate infrastructure to ensure him an uninterrupted path not only discourages him from visiting the establishment but also reflects a lack of commitment from the Municipality, which, despite being aware of this deficiency, has taken no action to resolve it.

57.2.    Interrupted Sidewalk Surface: Mr. Carlos Molina is aware that the sidewalk in front of 804 Coffee Bar at Pepe Abad Kia is interrupted by patches of grass and vegetation, making it difficult for him to move safely and without interruptions. The presence of grassy areas and plants along the pathway fragments the route, preventing his assistive device from traveling smoothly and continuously. The uneven terrain and lack of a uniform paved surface affect his experience, as they

create obstacles that compromise his stability and increase the risk of getting stuck or experiencing abrupt movements along his journey. The inability to navigate on an adapted surface makes him feel discouraged from visiting the establishment, as his safe and barrier-free mobility is not ensured. Additionally, the municipality, despite being aware of this issue, has taken no steps to address it, prolonging the difficulties Mr. Molina faces and limiting his ability to move autonomously and without risk.

57.3.    Entrance Without A Ramp: Mr. Carlos is aware that the absence of a ramp at the entrance of the establishment represents a significant barrier that prevents him from accessing the space safely and without obstacles. The presence of steps not only makes entry a considerable challenge but also directly blocks his ability to do so independently. Faced with this barrier, he is forced to depend completely on the help of others or expose himself to uncomfortable and risky maneuvers that compromise his safety. Beyond the additional physical effort this situation requires, the lack of an accessible entrance reinforces a feeling of exclusion, as the establishment does not provide conditions that allow all people to enter with equal opportunities. Knowing that the entrance is not adapted to his needs and that he faces difficulties from the very first moment makes Mr. Carlos feel discouraged from visiting the establishment, as he recognizes that his experience is marked by the lack of accessibility and autonomy from his arrival.

57.4.    Excessively High Counters: Mr. Carlos is aware that excessively high counters represent a significant barrier to his access and autonomy. When encountering a counter that exceeds the appropriate height for his reach, he faces difficulties

interacting effectively with the staff or completing any transaction independently. Due to his condition, which affects his strength and mobility, and the fact that he uses a wheelchair, it is impossible for him to reach the counter surface without excessive effort or third-party assistance. This situation not only causes him discomfort and frustration but also limits his ability to navigate independently, unnecessarily complicating his experience in the establishment.

57.5.    Counters Without Front Clearance: Mr. Carlos is aware that the lack of front clearance at counters represents a barrier that hinders his access and autonomy. When encountering a counter without adequate space at the front, he experiences difficulties getting close enough and positioning himself comfortably to complete a transaction. Due to his condition, which affects his mobility and strength, and the fact that he uses a wheelchair, the absence of this space prevents him from fully approaching, forcing him to stretch uncomfortably or rely on third-party assistance to interact with the staff. This situation not only causes him discomfort and frustration but also restricts his independence, makes his experience in the establishment unnecessarily difficult, and discourages him from visiting.

57.6.    Inaccessible Tables Due to a Lower Bar: Mr. Carlos is aware that the presence of a lower bar on tables represents a barrier that limits his access and comfort. When encountering a table of this kind, he struggles to position himself properly, as the lower bar obstructs the necessary space for his wheelchair to fit securely and stably. Due to his limited mobility and reliance on a wheelchair for movement, this obstruction prevents him from getting close enough to the table, forcing him to maintain an uncomfortable and strained posture to reach objects on the surface.

As a result, he experiences unnecessary muscle tension and fatigue, affecting his comfort and well-being during his stay. Additionally, the difficulty in positioning himself properly restricts his ability to interact naturally and without barriers with others. This situation not only limits his independence and autonomy but also makes his experience in the establishment frustrating and exhausting, discouraging him from visiting.

57.7.    To ensure that Mr. Carlos can access the establishment safely and independently, it is essential to implement solutions that eliminate the barriers that currently compromise his mobility, comfort, and overall experience. Adapting the infrastructure would not only facilitate his access but also demonstrate a genuine commitment to accessibility and inclusion. One of the main issues Mr. Carlos faces is the lack of an accessible ramp on the sidewalk in front of 804 Coffee Bar at Pepe Abad Kia. To address this barrier, a properly sloped ramp must be installed to allow him to move continuously and without obstacles along the sidewalk. This would prevent him from having to seek alternative routes that may be longer or unsafe, thereby reducing his physical effort and dependence on external assistance. Additionally, the municipality must take urgent action to correct this deficiency, as the absence of this infrastructure limits his right to move safely and autonomously. Similarly, the sidewalk surface must be leveled and made uniform, eliminating interruptions caused by patches of grass and vegetation that hinder his mobility. Properly paving the entire sidewalk would ensure that his assistive device can move smoothly without the risk of getting stuck or experiencing abrupt movements that affect his stability. Implementing

these improvements would not only allow him to travel more safely but also prevent the discouragement he feels when faced with a path that is not continuous or adapted to his needs. Regarding access to the establishment, it is crucial to install a ramp at the entrance to eliminate the barrier posed by the steps. This ramp should meet the proper standards for slope and safety, allowing him to enter without having to rely entirely on third-party assistance or expose himself to uncomfortable and risky maneuvers. Ensuring an accessible entrance would provide him with the ability to enter the premises independently, without facing a barrier from the very beginning that creates a sense of exclusion. Inside the establishment, modifications to the furniture are essential to improve his experience and ensure his comfort. Excessively high counters should be replaced or supplemented with accessible surfaces so he can interact with the staff and complete transactions without difficulties or the need for external assistance. Additionally, counters must have adequate front clearance so he can approach easily and position himself comfortably without being forced to stretch uncomfortably or awkwardly. Finally, tables with a lower bar must be modified, as this structure prevents him from positioning himself correctly and forces him into uncomfortable postures that cause muscle strain and fatigue. The solution is to replace or redesign these tables to provide adequate space underneath, ensuring that he can approach without restrictions and enjoy his stay without unnecessary discomfort. Implementing these solutions would not only improve Mr. Carlos's mobility and autonomy but also ensure that his experience in the establishment is safe, comfortable, and free of obstacles. Adapting the infrastructure and furniture

is a crucial step in guaranteeing his barrier-free access and preventing him from feeling discouraged from visiting the establishment due to a lack of accessibility. Additionally, if these barriers were eliminated, Mr. Carlos Molina would no longer feel discouraged from visiting the establishment.

### *Responsibility of the Municipality of Cidra and Mennonite General Hospital, Inc. - Hospital Menonita de Cidra*

58. Mr. Carlos Molina Román visited Menonita Hospital of Cidra in September and October 2024, with his last visit taking place on November 12, 2024. This hospital is a key point in his medical care, as he found the appropriate specialists there to treat his various conditions. Additionally, he requires essential laboratory tests to detect possible metabolic alterations or deficiencies that may require medical intervention, as well as weight monitoring. In patients with neuromuscular diseases, any fluctuation can indicate nutritional problems or muscle mass loss, which could worsen his condition.

59. However, during his visits, Mr. Carlos personally identified several architectural barriers at the facility, which significantly affected his experience. These obstacles compromised both his safety and dignity, making his visit far more complicated than expected. As a result, he feels discouraged from returning to the hospital, despite its importance in his medical care. Mr. Carlos has the intention to return to Menonita Hospital of Cidra in the next three months for continued medical follow-ups and essential laboratory tests, but he is currently dissuaded from doing so due to the persistent presence of accessibility barriers. The lack of adequate conditions for his movement within the hospital represents a significant obstacle that forces him to reconsider his visit. The barriers that Mr. Carlos identified are:

59.1.    Narrow Sidewalk: Mr. Carlos Molina encountered an extremely narrow sidewalk on his way to the hospital, which severely hindered his mobility and safety. The reduced dimensions of the sidewalk barely allowed his mobility device to pass through, forcing him to make precise maneuvers to prevent his wheels from hitting the edges. At every moment, he felt the risk of getting stuck between the sidewalk limits or being forced to move onto the street, exposing himself to traffic. This barrier not only affected his autonomy but also increased his emotional distress during the journey, as every meter traveled required constant concern for his safety. The additional effort needed to navigate such a restricted space heightened his anxiety since any involuntary movement put him in imminent danger. Furthermore, due to the lack of maneuvering space, encountering a pedestrian coming from the opposite direction or any additional obstacle completely blocks his path, forcing him to stop or even retreat. Despite the municipality's awareness of this issue and the direct impact on Mr. Carlos, it has failed to take corrective action, forcing him to face this obstacle.

59.2.    Uneven Sidewalk Surface: The sidewalk had a completely uneven surface, with depressions, sinkholes, and raised areas that made Mr. Carlos's movement extremely difficult. The instability of the terrain compromised his mobility, requiring him to stay in a constant state of alertness to prevent his wheelchair from getting stuck or losing balance. On multiple occasions, he felt how the front wheels got caught in small crevices, or how the abrupt changes in elevation caused sudden jolts, affecting his stability and making him feel unsafe throughout his journey. Beyond the physical hazard, this situation added emotional and

mental strain. The need to focus on every small detail of the path made his trip slower and more exhausting, generating unnecessary physical and emotional fatigue. The uncertainty of not knowing whether the next section of the sidewalk presents even more obstacles left him feeling vulnerable, as he can't fully trust that he can reach the hospital without incidents. Although the municipality has been informed of these conditions, it has neglected to address them, leaving Mr. Carlos to navigate these hazardous paths repeatedly without any sign of improvement.

59.3.   Obstructed Sidewalk: During his journey, Mr. Carlos encountered a sidewalk partially blocked by accumulated vegetation, primarily fallen leaves, branches, and overgrown bushes invading the pedestrian path. This obstruction further reduced the already limited space available for his movement, forcing him to make uncomfortable and dangerous maneuvers to navigate through. The buildup of dry leaves and small branches not only blocked his passage but also posed a safety hazard. The impact of this barrier was not just physical but also emotional. The need to stop repeatedly to assess how to pass through the obstructed area caused frustration and a sense of helplessness, as a route that should have been smooth and accessible became an unnecessary challenge. More than once, he had to consider veering onto the street, which meant exposing himself to even greater risks. The lack of maintenance and cleaning of the sidewalk left him with a sense of neglect. Despite the fact that the municipality is responsible for ensuring that sidewalks remain clear and accessible, it has failed to remove these obstacles, subjecting Mr. Carlos to the same struggles each time he travels this route.

59.4.    Severely Deteriorated Sidewalk: The extreme deterioration of the sidewalk became one of the most significant obstacles Mr. Carlos faced during his journey. The surface was riddled with deep cracks, potholes, severe elevation changes, and weeds growing through the concrete, making every meter traveled a test of endurance and precision. On multiple occasions, his wheelchair wheels got stuck in cracks or lost traction due to the instability of the surface. This situation not only slowed his progress but also put his physical integrity at risk. Each attempt to navigate a pothole required additional effort, increasing the strain on his arms and tension in his body. The lack of a leveled and properly maintained path forced him to make difficult maneuvers that heightened his fatigue and frustration. Beyond the physical toll, this barrier caused a deep sense of insecurity and vulnerability. Not being able to move confidently on a deteriorated sidewalk made him question whether future visits might result in an accident that places him in an even more difficult situation. Although the municipality is fully aware of the sidewalk's critical condition, it has chosen to ignore the problem, continuously placing Mr. Carlos in a dangerous situation every time he uses this path.

59.5.    Sidewalk Ramp in Poor Condition: During his journey, Mr. Carlos encountered a sidewalk ramp in poor condition, with faded paint and multiple cracks that affected both its visibility and functionality. The lack of maintenance made it difficult to distinguish the ramp's boundaries, increasing the risk of miscalculations when attempting to ascend or descend. Additionally, the cracks and surface deterioration made it harder for his wheelchair to move smoothly, causing sudden jolts whenever he crossed the damaged areas. The impact of this

barrier was both physical and psychological. The insecurity caused by the ramp's poor condition forced him to move with extreme caution, delaying his journey and increasing his stress levels. The possibility of his wheelchair wheels getting stuck or losing stability heightened his sense of vulnerability, leaving him uncertain as to whether, in future visits, the ramp continues deteriorating to the point of becoming completely unusable. Even though the municipality has been made aware of this issue, it has failed to implement necessary repairs, worsening Mr. Carlos's experience.

59.6.   Sidewalk Ramp Blocked: As Mr. Carlos approached one of the sidewalk access ramps, he noticed that it was partially blocked by overgrown grass and in an advanced state of deterioration. The presence of vegetation encroaching onto the ramp's surface made it difficult to identify the proper edges for a safe ascent, creating insecurity in his maneuvering. Additionally, the most deteriorated sections featured uneven surfaces and fractures that further complicated his passage, forcing him to seek less safe alternatives to continue his journey. This barrier not only compromised his physical safety when attempting to use the ramp but also had an emotional impact, making him feel that the surrounding conditions were not adapted to his mobility needs. The lack of proper maintenance turned a crucial access point into a nearly unusable area, adding unnecessary stress to his journey. Despite the fact that the municipality is responsible for keeping these ramps accessible, it has failed to do so, leaving Mr. Carlos to deal with these dangerous conditions alone.

59.7.  Ramp to the Parking Lot Blocked: While trying to access the parking lot, Mr. Carlos encountered a ramp blocked by various obstacles, which prevented him from moving freely. Among the obstructions were vehicles parked too close to the access point, misplaced trash bins, and other objects that significantly reduced the available space for his passage. This situation forced him to make uncomfortable and risky maneuvers to try and continue forward, increasing his fatigue and frustration. The blockage of this ramp affected his autonomy, as it made him dependent on others to either find an alternative route or remove the obstacles in his way. The fact that an essential access point was rendered unusable reflected poor planning and a lack of proper space management. Although the municipality is responsible for ensuring clear and accessible pathways, it has failed to prevent or address these obstructions, forcing Mr. Carlos to face this avoidable burden each time he visits the area.

59.8.  Ramp to the Parking Lot with Improper Slope: Mr. Carlos experienced significant difficulties using the ramp leading to the parking lot due to its improper slope. The incline was too steep, making the descent dangerous, as his wheelchair gains speed quickly without adequate control. Conversely, when trying to ascend, he was forced to exert excessive physical effort, leading to exhaustion and stress upon realizing that the slope did not meet proper accessibility standards. This barrier posed a considerable safety risk, as any miscalculation in handling his wheelchair can result in a fall or loss of control. Additionally, the inadequate design of the ramp's incline made him feel that the needs of individuals with mobility impairments were not taken into account when the hospital's

infrastructure was planned. The difficulty of safely accessing the parking lot caused him great concern about his well-being during future visits, making it clear that urgent modifications were needed to ensure risk-free passage.

59.9.    No Accessible Route to the Main Entrance: Upon arriving at the hospital, Mr. Carlos found that there was no accessible route leading him safely to the main entrance. There was no clearly marked and adapted pathway for individuals with reduced mobility, forcing him to take an alternative route filled with obstacles and uneven surfaces. The lack of signage indicating accessible entry points caused confusion and made him waste time trying to find a suitable way to reach his destination. This barrier had a significant impact on his experience, as it not only compromised his autonomy but also increased his sense of insecurity and frustration. The uncertainty of not having an adequate route made him doubt his ability to enter the hospital independently, adding to his stress and making him feel as if his mobility needs had not been considered in the design of the environment. The absence of an accessible pathway not only complicated his entry into the hospital but also highlighted a lack of awareness regarding individuals who, like him, rely on adapted infrastructure to ensure their right to safe and unrestricted access.

59.10.    Main Entrance Obstructed by Carpets or Rugs: When attempting to enter the hospital, Mr. Carlos encountered carpets or rugs placed at the main entrance, which created an unexpected obstacle for his mobility. Rather than facilitating access, these elements became a barrier by causing resistance against his wheelchair wheels, making it difficult for him to move forward. At times, he felt

the wheels slightly getting stuck, requiring him to exert extra effort to push forward, causing discomfort and increasing his risk of losing stability. Beyond the physical discomfort, this obstacle generated a sense of vulnerability and helplessness. A simple element that might go unnoticed by many became an additional challenge that should not exist at a main entrance. The lack of a design that prevents such barriers negatively impacted his experience when entering the hospital, making him feel that the needs of those using mobility devices had not been properly considered.

59.11.   Narrow Restroom Dimensions: When attempting to use the hospital's restrooms, Mr. Carlos encountered extremely reduced spaces, which severely hindered his mobility and compromised his autonomy. The lack of ample space inside the restrooms prevented him from maneuvering his wheelchair properly, forcing him to make uncomfortable and unsafe movements to access the necessary facilities. This barrier had a significant impact on his dignity and well-being, as the inability to move freely within the restroom compromised his independence. The need for assistance in such a personal space was frustrating and humiliating. Additionally, the risk of getting stuck or being unable to turn properly inside the restroom increased his anxiety and sense of insecurity during his hospital visit.

59.12.   Accessible Restroom with a Side Grab Bar Placed Too High: Inside the accessible restroom, Mr. Carlos found a side grab bar installed at an inadequate height, making it difficult to use and reducing its functionality. When he attempted to hold onto the bar for support or to perform a safe transfer, he noticed that it was positioned beyond his optimal reach, forcing him to exert extra effort to try to

grasp it. This caused discomfort and a considerable risk of losing balance or falling. Beyond the physical difficulty, this barrier affected his confidence in the hospital's infrastructure, as an element designed to provide safety instead became an additional challenge. The improper placement of the grab bar not only limited his ability to use the restroom independently but also made him question whether the hospital truly adhered to the proper accessibility standards for individuals with mobility impairments.

59.13.    Accessible Restroom Without a Rear Grab Bar: While using the accessible restroom, Mr. Carlos noticed the absence of a rear grab bar, which posed a critical issue for his stability and safety. This type of bar is essential for individuals with reduced mobility, as it allows them to perform transfers securely by providing balanced weight distribution. Without this feature, any attempt to move inside the restroom became a risky and impractical maneuver. The lack of this grab bar not only increased the difficulty of using the restroom but also heightened his sense of insecurity and vulnerability. Without a proper support point, any additional effort to stabilize himself can result in an accident. Furthermore, the absence of this essential element reflected a lack of consideration for the real needs of those who rely on accessible designs to maintain their independence and dignity in a fundamental space such as a restroom.

59.14.    The barriers encountered by Mr. Carlos can be addressed through specific improvements that enhance safety, usability, and independence: one of the primary concerns is the narrow sidewalk, which should be widened to comply with accessibility standards, ensuring enough space for safe and comfortable

movement. Where expansion is not feasible, a dedicated pedestrian pathway should be established, free from obstructions and with a smooth surface. Similarly, uneven sidewalks should undergo regular inspection and maintenance to repair depressions, sinkholes, and raised areas that make movement difficult. Cracks should be filled, and the terrain should be leveled to provide a stable path. Additionally, obstructed sidewalks due to overgrown vegetation or debris must be routinely cleaned and monitored. Landscaping plans should prevent bushes and trees from encroaching on pedestrian pathways, ensuring that individuals with mobility impairments do not face unnecessary obstacles during their journeys. The severe deterioration of sidewalks is another pressing issue that must be addressed through a comprehensive restoration plan. High-traffic areas, such as those leading to hospitals, should be prioritized for resurfacing, fixing deep cracks and potholes, and eliminating sudden elevation changes that create hazards for wheelchair users. Sidewalk ramps in poor condition require urgent attention as well, with visible markings and durable, non-slip surfaces ensuring that their boundaries remain clearly distinguishable. Cracks and structural damage should be repaired promptly to prevent further deterioration. Similarly, sidewalk ramps blocked by vegetation or debris must be kept clear to guarantee unobstructed movement. A policy should be enforced to prohibit improper parking or placement of objects that block ramp access, with regular inspections ensuring compliance. In parking areas, accessibility can be improved by addressing blocked ramps, which are often obstructed by vehicles, trash bins, or other misplaced objects. A designated clearance zone should be enforced, supported by

clear signage and regular monitoring. Additionally, ramps leading to the parking lot with improper slopes should be reconstructed to meet accessibility standards, ensuring that inclines do not exceed the recommended ratio of 1:12. If immediate reconstruction is not possible, alternative accessibility solutions such as gradual secondary routes or supportive handrails should be implemented. The lack of an accessible route to the hospital's main entrance must also be corrected. A dedicated, clearly marked accessible pathway should be created, free from obstacles and with proper lighting to ensure visibility and safety. Additionally, signage should indicate accessible entrances to prevent confusion and unnecessary delays. At the entrance, carpets or rugs that obstruct movement should be removed or replaced with securely fixed, low-friction materials that do not interfere with wheelchair wheels. Inside the facility, narrow restroom dimensions should be redesigned to allow sufficient space for wheelchair users to maneuver comfortably. Where expansion is not immediately feasible, alternative accessible restrooms should be made available, clearly marked, and easily reachable. Furthermore, grab bars in accessible restrooms must be properly positioned to meet standardized heights, ensuring they are within reach and effectively provide stability and support. Restrooms that lack a rear grab bar should be modified immediately to facilitate safe and secure transfers. Routine compliance inspections should ensure that restroom facilities meet accessibility standards, providing users with the safety and independence they require.

**D. The Municipality of Cidra's Failure to Ensure Accessibility in Public Spaces**

60.    The Municipality of Cidra has continuously failed to address the accessibility barriers that prevent Mr. Carlos Molina Román from moving safely and independently within his

community. The sidewalks and curb ramps throughout the municipality, including those adjacent to the co-defendant establishments in this Complaint, are in severe disrepair. These essential pathways, which should be accessible to individuals with disabilities, instead have cracks, uneven surfaces, obstructions caused by illegally parked vehicles, and overgrown vegetation, making it nearly impossible for Mr. Molina to navigate them using his wheelchair.

61.   Additionally, the lack of proper landing areas and the unsafe transitions between curb ramps and the roadway further obstruct his movement, often forcing him to resort to dangerous alternatives just to reach his destination. As a person with muscular dystrophy and oculocutaneous albinism, Mr. Molina relies on stable and accessible infrastructure to navigate public spaces. However, the Municipality of Cidra's failure to maintain its sidewalks and curb ramps creates significant barriers that prevent him from accessing businesses, services, and public spaces in the same manner as individuals without disabilities.

62.   Despite its responsibility to ensure accessibility, the Municipality of Cidra has failed to enforce proper maintenance and compliance with the Americans with Disabilities Act (ADA) and other applicable accessibility standards. Its inaction has not only rendered public sidewalks inaccessible but has also significantly obstructed Mr. Carlos Molina Román's ability to navigate the municipality safely and independently, forcing him to avoid entire areas due to their hazardous conditions. As a person with muscular dystrophy and oculocutaneous albinism who relies on a wheelchair for mobility, Mr. Molina faces daily challenges caused by the Municipality of Cidra's failure to provide safe, accessible

pedestrian routes, effectively restricting his freedom of movement and full participation in public life.

63.    The Municipality of Cidra has also failed to regulate parking violations, allowing vehicles to obstruct curb ramps and pedestrian pathways, further limiting Mr. Carlos Molina Román's ability to move freely and safely. Despite the clear need to implement and enforce parking restrictions, local authorities have neglected to install proper signage, impose penalties, or take corrective measures to prevent illegal parking in these critical areas. As a result, Mr. Molina often finds himself unable to access businesses, sidewalks, and public spaces, forcing him to alter his plans, take unsafe routes, or abandon visits altogether. This failure to address illegal parking exacerbates the already significant accessibility barriers he faces, further restricting his independence and full participation in the community.

64.    This pattern of inaction extends beyond sidewalks and parking areas to the co-defendant establishments identified in this Complaint, which Mr. Carlos Molina Román has considered visiting. Many of these businesses fail to provide accessible entry routes, as they are surrounded by damaged sidewalks, narrow pathways, and improperly designed curb ramps, all of which create dangerous conditions for individuals with mobility impairments. These barriers include cracked and uneven pavement, missing or deteriorated curb ramps, obstructions caused by overgrown vegetation, and sidewalks rendered impassable due to vehicles illegally parked on pedestrian pathways. Additionally, the lack of proper landing areas and abrupt changes in elevation between sidewalks and roadways further hinder safe mobility for wheelchair users.

65.  The Municipality of Cidra has long been aware of these conditions but has neglected to require businesses to comply with accessibility laws. This lack of enforcement has allowed these businesses to continue operating without ensuring safe and accessible entry for individuals like Mr. Molina. As a result, he is often forced to take unsafe alternative routes, exert excessive physical effort to navigate these hazardous conditions, or abandon his visits altogether. The continued failure to address these accessibility barriers denies Mr. Molina the same freedom of movement and community participation available to individuals without disabilities, reinforcing a discriminatory and exclusionary environment within the municipality.

66.  By knowingly allowing these barriers to persist, the Municipality of Cidra has systematically denied Mr. Carlos Molina Román equal access to public spaces. Its failure to maintain sidewalks, regulate parking, and enforce accessibility standards at the co-defendant establishments demonstrates a blatant disregard for the rights and safety of individuals with disabilities. The presence of cracked and uneven sidewalks, missing or improperly designed curb ramps, obstructions from illegally parked vehicles, and overgrown vegetation significantly hinders Mr. Molina's ability to navigate the municipality safely and independently. Additionally, businesses continue to operate without providing accessible entry routes, further exacerbating the exclusion he experiences.

67.  The Municipality of Cidra's continued inaction constitutes a failure to fulfill its legal obligation to ensure accessibility, leaving Mr. Carlos Molina Román at a constant and unjust disadvantage. By neglecting to maintain sidewalks, regulate illegal parking, and enforce accessibility standards at the co-defendant establishments, the Municipality has

created an environment where individuals with disabilities are systematically excluded from fully participating in public life. This persistent failure not only violates federal accessibility laws but also reinforces barriers that prevent Mr. Molina from moving safely and independently within his own community.

**E. Violations of Title III of the Americans with Disabilities Act (ADA) by Places of Public Accommodation**

68.    The defendants Don Quijote Pizza LLC; E' Pura Cepa LLC; Flor de Maga Gastrobar LLC; Lucios Restaurant L.L.C.; Colmado Morales, Inc.; Nonna's Pizza a Leña LLC; Ñao Kitchen Art L.L.C.; Junta de Titulares Villa del Carmen Mall LLC; Misangeles Corp.; Panera MS Corp.; Polito's Coffee Inc.; Pueblo Viejo, LLC; Q'Rico Brunch & Restaurant LLC; Restaurant de la Pagoda China Corp.; Madi Services LLC; Grupo Rivera Rivera LLC; 804 Coffee Bar LLC; and Mennonite General Hospital, Inc.; (hereinafter, "Co-Defendants") identified in this Complaint as operators of places of public accommodation; are subject to the requirements of Title III of the Americans with Disabilities Act (ADA); 42 U.S.C. § 12181 et seq.; which mandates ensuring accessibility and equitable participation for individuals with disabilities in their facilities.

69.    Despite this legal obligation; these defendants; with the tacit approval of the Municipality of Cidra; continue to operate in violation of the ADA by failing to provide safe and accessible entry to their establishments.

70.    The Co-Defendants have failed to comply with the ADA by maintaining architectural barriers that prevent Mr. Carlos Molina Román from freely accessing their facilities. These violations include, but are not limited to:

70.1.    Lack of properly designated accessible parking spaces, including van-accessible spaces, failing to meet ADA parking standards.

70.2.    Absence of clear signage for accessible parking, allowing unauthorized vehicles to occupy these spaces, further restricting access.

70.3.    Damaged or improperly designed parking lots, with excessive slopes, cracks, potholes, and moisture accumulation, making it unsafe or impossible for individuals using mobility aids to navigate.

70.4.    Excessively high service counters, restricting Mr. Carlos Molina Román's ability to interact with staff or complete transactions independently due to his reliance on a wheelchair.

70.5.    Counters lacking adequate depth, preventing a frontal approach for wheelchair users, forcing them to remain at an uncomfortable distance.

70.6.    Obstructed pathways inside and outside the establishments, including narrow aisles, improperly placed furniture, and obstacles such as trash bins, further limiting accessibility.

70.7.    Inaccessible dining areas, where tables lack adequate knee clearance or are positioned in ways that prevent individuals using wheelchairs from seating comfortably.

70.8.    Restrooms that are completely inaccessible, either due to narrow doors, lack of maneuvering space, missing grab bars, or improper height of restroom fixtures.

70.9.    Lack of clear signage for accessible restrooms, forcing individuals with mobility impairments to search for suitable facilities, leading to excessive fatigue and discomfort.

70.10.    Entrances with steps and no ramps, completely barring independent access to establishments for individuals in wheelchairs.

70.11.   Unstable flooring with loose stones, which creates hazardous conditions that make it difficult for mobility device users to move safely.

70.12.   Illegally placed structures, such as posts and columns, obstructing interior spaces and preventing individuals from maneuvering freely.

70.13.   Excessively high bar and transaction counters, further limiting the ability of individuals with mobility impairments to receive service.

70.14.   Inaccessible terraces and outdoor seating areas, where the arrangement of tables and flooring design prevents individuals using wheelchairs from accessing these spaces.

70.15.   Unmarked or poorly designed ramps leading to entrances, failing to provide a safe and functional alternative to stairs.

70.16.   Limited interior space, with furniture and other obstacles preventing individuals with mobility disabilities from comfortably moving around and accessing services.

71.   These barriers, among others, prevent Mr. Carlos Molina Román from enjoying equal access to these establishments, effectively excluding him from fully participating in his community. The Co-Defendants' failure to remove these obstacles demonstrates a clear violation of their obligations under the ADA.

72.   The lack of enforcement by the Municipality of Cidra has resulted in the creation of widespread architectural barriers that severely impact individuals with mobility impairments, including Mr. Carlos Molina Román, who is often forced to navigate unsafe conditions, alter his plans, or avoid these businesses altogether. As a result, he is deprived of the ability to access essential goods and services available to the general public,

reinforcing his exclusion from spaces that should be accessible to all individuals, regardless of their mobility limitations. The continued inaction of the Municipality of Cidra and the Co-Defendants not only violates federal accessibility laws but also perpetuates systemic discrimination against individuals with disabilities, denying them equal opportunities to participate fully in their community.

**F. Violations of Title II of the Americans with Disabilities Act (ADA) by the Municipality of Cidra**

73.     The Municipality of Cidra has an affirmative legal duty to ensure that public sidewalks, curb ramps, and pedestrian pathways within its jurisdiction comply with accessibility requirements and remain free from barriers that obstruct individuals with mobility impairments. However, the Municipality has systematically failed to fulfill this obligation, thereby creating an environment that is unsafe, exclusionary, and discriminatory for individuals with disabilities, such as Mr. Carlos Molina Román. This ongoing failure to address and remediate accessibility barriers denies individuals with disabilities equal access to public spaces and services, reinforcing systemic discrimination and restricting their full participation in the community.

74.     The Municipality of Cidra bears direct responsibility for the ongoing maintenance, repair, and regulation of sidewalks and curb ramps throughout the municipality, including those surrounding the Co-Defendant establishments identified in this Complaint, which Mr. Carlos Molina Román has considered visiting. This responsibility extends to ensuring that pedestrian pathways are maintained in an accessible condition, free from hazardous defects, and that they meet the standards outlined in the 2023 Public Right-of-Way Accessibility Guidelines (PROWAG). However, the Municipality of Cidra has failed to

uphold this duty, allowing accessibility barriers to persist and preventing individuals with mobility impairments from navigating public spaces safely and independently.

75. Despite this legal obligation, the Municipality of Cidra has allowed public sidewalks and curb ramps to remain in severe disrepair, with broken pavement, cracks, potholes, overgrown vegetation, and abrupt transitions that make them impassable for individuals using wheelchairs or other mobility aids. Additionally, the Municipality has failed to regulate illegal parking practices, resulting in vehicles obstructing curb ramps and pedestrian pathways, further restricting Mr. Carlos Molina Román's ability to navigate these areas independently and safely. This persistent failure to address accessibility barriers not only violates federal accessibility laws but also forces individuals with mobility impairments to endure hazardous conditions, limiting their freedom of movement and full participation in public life.

76. The lack of enforcement and corrective action by the Municipality of Cidra has subjected Mr. Carlos Molina Román to serious risks to his personal safety, dignity, and mobility. Due to the pervasive inaccessibility of sidewalks, he is frequently forced to take dangerous, unregulated detours, including moving onto the street, where he is directly exposed to vehicular traffic. This places him in immediate danger of being struck by moving vehicles and causes significant physical and emotional distress. Furthermore, the inconsistent and unsafe pedestrian routes prevent him from fully participating in daily activities, such as attending medical appointments, shopping, or engaging in recreational outings. The Municipality of Cidra's continued failure to ensure accessible pedestrian pathways has effectively excluded Mr. Molina from accessing essential services and

public spaces, reinforcing systemic discrimination against individuals with mobility impairments.

77.    The sidewalk system surrounding the Co-Defendant establishments serves as an essential pedestrian route for Mr. Carlos Molina Román and other individuals with disabilities. However, due to the combined negligence of the Municipality of Cidra and the Co-Defendants, this route is entirely unreliable and unsafe. The Municipality's inaction has severely compromised connectivity and pedestrian flow, creating insurmountable obstacles for individuals who rely on mobility aids. As a result, Mr. Molina is frequently unable to access businesses, services, and public spaces safely and independently, further reinforcing his exclusion from areas that should be fully accessible under the law.

78.    By allowing these barriers to persist, the Municipality of Cidra is in systematic violation of Title II of the ADA, 42 U.S.C. § 12131 et seq., which mandates that public entities ensure accessibility and prohibit discrimination against individuals with disabilities in the provision of services, programs, and activities. The design, maintenance, and enforcement of accessibility standards for public sidewalks and curb ramps constitute a core governmental responsibility under Title II. Therefore, the Municipality's failure to implement and enforce accessibility regulations constitutes discrimination in a pattern and practice of exclusion, depriving Mr. Carlos Molina Román and others with mobility disabilities of their right to full and equal access to public spaces. This ongoing failure denies them the ability to navigate public areas safely and independently, reinforcing systemic barriers that prevent their full participation in community life.

**G. Violation of Section 504 of the Rehabilitation Act by the Municipality of Cidra**

79.    Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, prohibits discrimination on the basis of disability in programs and activities that receive federal financial

assistance. As a recipient of federal funds, the Municipality of Cidra is legally obligated to ensure accessibility and prevent discrimination against individuals with disabilities in all services, programs, and activities under its jurisdiction, including the maintenance and regulation of public sidewalks, curb ramps, and pedestrian pathways.

80. Despite this clear legal obligation, the Municipality of Cidra has engaged in systemic discrimination by failing to take affirmative actions to remove architectural barriers from its pedestrian infrastructure and by allowing sidewalks to be blocked by illegally parked vehicles. The continued inaction and failure to enforce accessibility regulations have directly resulted in the exclusion of Mr. Carlos Molina Román from a fundamental public service—safe and accessible pedestrian pathways.

81. This failure constitutes a clear violation of Section 504 and reflects intentional discrimination against Mr. Carlos Molina Román based on his disability. The Municipality of Cidra has been fully aware of the hazardous conditions of its sidewalks and curb ramps, including broken pavement, missing landing areas, potholes, cracks, and abrupt level changes, yet has chosen not to take corrective measures. Additionally, it has failed to implement parking enforcement policies, allowing vehicles to illegally obstruct designated pedestrian access points, curb ramps, and sidewalks, further restricting Mr. Molina's ability to navigate his community safely.

82. By allowing these barriers to persist, the Municipality of Cidra has effectively denied Mr. Carlos Molina Román the use and enjoyment of public spaces, in direct violation of Section 504. Its failure to ensure compliance with federal accessibility standards has forced Mr. Molina to either risk injury by navigating hazardous pedestrian routes or

remain confined to his home, thereby depriving him of his right to participate in everyday community life on equal terms with others.

**H. Use Permits Granted in Violation of Accessibility Laws**

83. The Municipality of Cidra has systematically granted and maintained use permits for the Co-Defendants identified in this Complaint, despite their failure to comply with accessibility laws. As a result, these establishments have been allowed to operate despite the existence of significant architectural barriers that prevent individuals with disabilities, such as Mr. Carlos Molina Román, from accessing their facilities safely and independently. This institutionalized practice of non-compliance has resulted in the issuance of permits based on false or incomplete information, leading to the continued operation of establishments that do not meet the legal standards for accessibility.

84. Specifically, the Co-Defendants identified in this Complaint failed to meet accessibility requirements at the time of their permit applications and continue to operate in violation of the law, as follows:

   84.1. In their use permit applications before the Municipality of Cidra, the Co-Defendants falsely asserted that their establishments complied with accessibility laws, when the actual conditions of their facilities demonstrate otherwise.

   84.2. The Co-Defendants fraudulently certified that their establishments had accessible entrances and routes, yet they maintain permanent obstacles that prevent individuals with disabilities from safely accessing them.

   84.3. In their permit applications, the Co-Defendants misrepresented that they provided the legally required maneuvering space for individuals using mobility aids, when

the actual space is significantly smaller than the minimum legal requirement, making it impossible for Mr. Carlos Molina Román to move freely.

84.4.  The Co-Defendants concealed the fact that their service counters exceed the legally permitted height for accessibility, making them inadequate and unusable for individuals with mobility impairments, such as Mr. Molina.

84.5.  The permit applications falsely certified that the restroom facilities met accessibility requirements, yet in reality, these establishments lack sufficient maneuvering space, have improperly installed grab bars, and place obstacles such as trash bins that further limit accessibility.

84.6.  The Co-Defendants failed to disclose that they use their parking areas in ways that obstruct access routes, eliminating accessible paths and forcing individuals with disabilities to move onto hazardous terrain, thereby placing them in direct danger.

84.7.  The Co-Defendants misrepresented compliance with accessible parking requirements, failing to provide the correct number of accessible spaces, failing to designate van-accessible spaces, and neglecting to install proper signage and markings, creating additional barriers that prevent safe and independent access.

84.8.  Lack of properly designated accessible parking spaces, including van-accessible spaces, failing to meet ADA parking standards.

84.9.  Absence of clear signage for accessible parking, allowing unauthorized vehicles to occupy these spaces, further restricting access.

84.10.  Damaged or improperly designed parking lots, with excessive slopes, cracks, potholes, and moisture accumulation, making it unsafe or impossible for individuals using mobility aids to navigate.

84.11.   Excessively high service counters, restricting Mr. Carlos Molina Román's ability to interact with staff or complete transactions independently due to his reliance on a wheelchair.

84.12.   Counters lacking adequate depth, preventing a frontal approach for wheelchair users, forcing them to remain at an uncomfortable distance.

84.13.   Obstructed pathways inside and outside the establishments, including narrow aisles, improperly placed furniture, and obstacles such as trash bins, further limiting accessibility.

84.14.   Inaccessible dining areas, where tables lack adequate knee clearance or are positioned in ways that prevent individuals using wheelchairs from seating comfortably.

84.15.   Restrooms that are completely inaccessible, either due to narrow doors, lack of maneuvering space, missing grab bars, or improper height of restroom fixtures.

84.16.   Lack of clear signage for accessible restrooms, forcing individuals with mobility impairments to search for suitable facilities, leading to excessive fatigue and discomfort.

84.17.   Entrances with steps and no ramps, completely barring independent access to establishments for individuals in wheelchairs.

84.18.   Unstable flooring with loose stones, which creates hazardous conditions that make it difficult for mobility device users to move safely.

84.19.   Illegally placed structures, such as posts and columns, obstructing interior spaces and preventing individuals from maneuvering freely.

84.20.   Excessively high bar and transaction counters, further limiting the ability of individuals with mobility impairments to receive service.

84.21.   Inaccessible terraces and outdoor seating areas, where the arrangement of tables and flooring design prevents individuals using wheelchairs from accessing these spaces.

84.22.   Unmarked or poorly designed ramps leading to entrances, failing to provide a safe and functional alternative to stairs.

84.23.   Limited interior space, with furniture and other obstacles preventing individuals with mobility disabilities from comfortably moving around and accessing services.

85.   The Municipality of Cidra has granted use permits without conducting proper inspections to verify compliance with accessibility laws, allowing the Co-Defendants to continue operating despite their failure to provide accessible entrances, paths of travel, parking, and service areas.

86.   The Municipality of Cidra has demonstrated a pattern of negligence in its duty to enforce accessibility laws. Rather than ensuring that the Co-Defendants comply with the law before issuing permits, the Municipality has:

86.1.   Failed to conduct adequate inspections before granting use permits, allowing businesses with clear accessibility violations to continue operating.

86.2.   Ignored the poor condition of access routes and the lack of compliance with accessibility standards, further exacerbating the mobility barriers faced by Mr. Carlos Molina Román and others with disabilities.

86.3.    Failed to implement penalties or fines against businesses that obstruct access routes, fail to provide proper accessible parking, or operate without meeting basic accessibility standards.

87.    Not only has the Municipality of Cidra granted use permits to the Co-Defendants identified in this Complaint without verifying compliance with accessibility laws, but it has also failed to implement enforcement mechanisms to correct these violations. The Municipality is fully aware that many of these businesses operate with significant architectural barriers and continue to deny equal access to individuals with mobility impairments, yet it has chosen not to take action to address these issues.

88.    The number of enforcement actions or fines issued for violations related to accessibility barriers is virtually nonexistent, reflecting a complete lack of commitment to ensuring compliance with accessibility laws. Instead of protecting the rights of individuals with disabilities, the Municipality of Cidra has prioritized the convenience of businesses, allowing the continued operation of non-compliant establishments at the expense of accessibility. This has led to severe consequences for individuals like Mr. Carlos Molina Román, who faces immense difficulties in navigating these areas safely.

89.    The use permits granted to the Co-Defendants identified in this Complaint are null and void, as they were obtained based on false or incomplete information regarding accessibility compliance. These businesses failed to disclose material information about existing architectural barriers, and the Municipality of Cidra failed in its duty to verify compliance before issuing permits.

90.    Therefore, the plaintiff respectfully requests that the Court, after completing the requisite procedural steps, order the immediate revocation of these use permits and mandate the

correction of all existing accessibility barriers within and around the Co-Defendants' establishments. Additionally, the Municipality of Cidra must be required to implement proper oversight and enforcement mechanisms to ensure that all public accommodations comply with accessibility laws, thereby preventing further discrimination against individuals with disabilities, including Mr. Carlos Molina Román.

91. Mr. Molina has been repeatedly forced to use his personal vehicle to access essential locations, including the Mennonite General Hospital, due to the Municipality of Cidra's failure to maintain accessible sidewalks. The barriers in the pedestrian pathways have left him no choice but to rely on his car, incurring unnecessary vehicle-related expenses on multiple occasions in the past year. For instance, on March 17, 2025, Mr. Molina was unable to navigate the sidewalks to move around the city, compelling him to drive instead. As a result, he incurred fuel and maintenance costs that he would not have otherwise borne had the sidewalks been properly accessible. In light of these avoidable economic burdens directly resulting from the Municipality's non-compliance with the ADA and Rehabilitation Act, Mr. Molina respectfully requests compensation in the amount of $1.00 for all prior economic damages incurred due to the forced use of his personal vehicle in situations where he should have been able to navigate safely via public pedestrian infrastructure.

## IV.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Carlos Molina Román respectfully requests that this Court:

1. Issue a declaratory judgment that the Municipality of Cidra, its Downtown Development Authority, and all named co-defendants have violated Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, Section 504 of the Rehabilitation Act, 29 U.S.C. §

794, and the Puerto Rico Persons With Disabilities Civil Rights Act by failing to ensure that their facilities, services, programs, and activities are readily accessible to and usable by individuals with disabilities;

2. Issue a declaratory judgment that the Municipality of Cidra has violated the ADA by failing to conduct a self-evaluation and prepare a transition plan as required by 28 C.F.R. § 35.105 and § 35.150(d);

3. Issue a preliminary and permanent injunction ordering the Municipality of Cidra to immediately cease removing existing accessibility features, including curb cuts and ramps, and to restore all previously removed accessibility features within 90 days;

4. Issue a preliminary and permanent injunction ordering the Municipality of Cidra to retain a qualified third-party Accessibility Consultant within 3 months to conduct a comprehensive assessment of all barriers in the Public Sidewalk System, to be completed within 12 months;

5. Order the Municipality of Cidra to develop and implement, within 6 months, a comprehensive Transition Plan that: a. Identifies all physical barriers that limit accessibility of programs, activities, or services to individuals with disabilities; b. Describes the methods to be used to make facilities accessible; c. Specifies a schedule for taking necessary steps to achieve compliance; d. Indicates the official responsible for implementation; and e. Sets forth a procedure for addressing grievances;

6. Order the Municipality of Cidra to create and maintain an accessible barrier reporting system within 60 days, including: a. An accessible online form for reporting barriers; b. Multiple reporting methods (online, phone, in-person); c. A centralized electronic

database of all reported barriers; and d. Mandatory response timelines for addressing reported barriers;

7.  Order all defendants to implement a formal prioritization system for remediation that addresses: a. Routes providing access to governmental offices and facilities first; b. Transportation terminals and major commercial corridors second; c. Places of public accommodation and employers third; and d. Residential neighborhoods fourth;

8.  Order all defendants to implement a certification program requiring that all new construction, alterations, or repairs to the Public Sidewalk System be inspected and certified as compliant with ADA Accessibility Standards by independent licensed Subject Matter Experts;

9.  Order all defendants to provide mandatory comprehensive training on ADA requirements for all municipal employees involved in construction, permitting, zoning, or maintenance of public rights-of-way;

10. Order the Municipality of Cidra to establish an effective ADA grievance procedure and to designate a qualified ADA Coordinator who will be responsible for overseeing compliance with this order;

11. Order the revocation of all use permits granted to businesses that were obtained based on false or incomplete information regarding accessibility compliance, and require new inspections before reinstatement;

12. Order all business defendants to implement remediation plans to remove architectural barriers within their establishments, including but not limited to: a. Accessible entrances and paths of travel; b. Compliant service counters at accessible heights; c. Accessible restroom facilities; and d. Accessible tables and seating areas;

13. Order the establishment of a court-appointed monitor for a period of not less than 5 years to: a. Oversee implementation of all remediation efforts; b. Verify compliance with court orders; c. Review quarterly progress reports; and d. Report to the Court on a quarterly basis;

14. Order the creation of an Accessibility Advisory Committee that includes persons with disabilities from Cidra to provide input on prioritization and implementation of remediation efforts;

15. Order quarterly status conferences with the Court to assess progress and address any implementation issues;

16. Order the development and maintenance of a public-facing website documenting all identified barriers, remediation plans, and progress;

17. Award nominal damages under Title II of the ADA in the amount of $1.00 to Plaintiff Carlos Molina Román;

18. Award nominal damages under Section 504 of the Rehabilitation Act in the amount of $1.00 to Plaintiff Carlos Molina Román;

19. Award economic damages in the amount of $1.00 to Plaintiff Carlos Molina Román for costs incurred due to being forced to use his car instead of traversing safely on public sidewalks;

20. Award compensatory damages in an amount to be determined at trial for violations of the Puerto Rico Persons With Disabilities Civil Rights Act;

21. Award reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, and applicable Puerto Rico law;

22.    Retain jurisdiction over this matter for a period of not less than 5 years to ensure implementation of all ordered remedies;

23.    Impose a progressive penalty structure for missed deadlines or incomplete remediation efforts;

24.    Order the Municipality of Cidra to allocate a specific percentage of its annual budget to accessibility improvements;

25.    Order each defendant to submit quarterly compliance reports to the Court, Plaintiff, and the court-appointed monitor;

26.    Order defendants to create a centralized system to document and track all complaints related to accessibility issues;

27.    Order the immediate implementation of proper maintenance protocols to ensure that existing accessible features remain usable;

28.    Order the development of written policies and procedures for ensuring ADA compliance in all future construction, alteration, and maintenance projects;

29.    Order defendants to conduct annual reassessments of remediated areas to ensure continued compliance; and

30.    An order directing the Municipality of Cidra to enforce parking regulations to prevent illegal parking practices that obstruct curb ramps and pedestrian pathways, including:

    30.1.    Installing proper no-parking signage near accessible routes and curb ramps.

    30.2.    Implementing a penalty system with progressive fines for vehicles that block designated pedestrian access points.

    30.3.    Conducting routine enforcement patrols to ensure compliance with accessibility regulations.

31.    Any other relief that this Court deems just, equitable, and appropriate in the interest of

ensuring accessibility and eliminating discrimination against individuals with disabilities.

**Dated:** March 18,  2025.

**RESPECTFULLY SUBMITTED.**

**Velez Law Group LLC**
Civil Rights Division


s/José Carlos Vélez Colón
José Carlos Vélez Colón
USDC-PR 231014

4204 Six Forks Rd, Apt 1209
Raleigh, NC 27609-6427

E:     vlg@velezlawgroup.com
C:     (787)-422-1881

**Attorney for Plaintiff**